Jessie BERGER, et al.

v.

**IRON WORKERS REINFORCED RODMEN LOCAL 201, et al.,
Appellants,**

**International Association of Bridge, Structural and Ornamental Iron Workers, et al.**

Nos. 86–5028, 86–5275 to 86–5277.

United States Court of Appeals, District of Columbia Circuit.

July 29, 1988.

---

John L. Oberdorfer, Andrew S. Newman and John F. Dienelt were on the appellees' response to the petition.

James R. O'Connell and Sally M. Tedrow Washington, D.C., were on the Petition for Rehearing for appellants Rodmen Local 201, Apprenticeship Committee and Training Program.

Before EDWARDS, STARR and GINSBURG, Circuit Judges.

## ON APPELLANTS' PETITION FOR REHEARING

PER CURIAM:

Local 201, the Apprenticeship Committee, and the Training Program have petitioned this court for rehearing on various questions. The one question to which we invited appellees to respond is whether these three entities are jointly liable for the discrimination caused by the requirement that experienced rodmen complete a Union-supervised educational program in order to be eligible to take the journeyman examination, and thus, to obtain union membership. Because we believe that our earlier opinion is unclear on this issue, and that the peti-tioners' position is well-founded, we grant the appellants' petition for rehearing.

In our opinion we said:

> The parties have assumed, and we do not question their assumption, that Local 201, the Apprenticeship Committee, and the Training Program, although all separately named defendants, are jointly liable for any discriminatory conduct *in the operation* of the Apprenticeship and Training Program.

*Berger v. Iron Workers Reinforced Rodmen, Local 201*, 843 F.2d 1395, 1414 n. 11 (D.C.Cir.1988) (emphasis added). We also noted, however, that "there were no allegations of discrimination in the *administration* of the programs" by the Apprenticeship Committee and the Training Program, *id.* at 1417–18 (emphasis in original), and thus we had no occasion to pass upon the issue of their joint liability for operations. We upheld the district court's conclusion that Local 201 violated Title VII and section 1981 by requiring experienced rodmen to complete a Union-supervised educational program, *id.* at 1422, but we did not go on to address the question raised in the petition for rehearing—*i.e.*, whether the Apprenticeship Committee and the Training Program may be held jointly liable with Local 201 for the effects of that threshold requirement imposed by the union. On this issue, our opinion is silent.

The Apprenticeship Committee and the Training Program argue that the decision to require experienced rodmen to complete an educational program was made solely by the local (with, as we concluded, the approval of the International), and as joint labor management committees established pursuant to 42 U.S.C. §§ 2000e(b), (d), they had no authority to determine who must complete the programs they administer, or otherwise set standards for union membership. In any event, the record contains no evidence that either of them participated with the union in imposing the educational requirement. As a result, they maintain that neither joint committee may be held liable unless Local 201 was acting as their agent when it established the educational prerequisite to the journeyman examina-

tion, a proposition that is dubious at best. *See Waggoner v. Dallaire,* 649 F.2d 1362 (9th Cir.1981); *cf. General Building Contractors v. Pennsylvania,* 458 U.S. 375, 391–97, 102 S.Ct. 3141, 3150–53, 73 L.Ed.2d 835 (1982).

The plaintiffs admit that "the two committees are separate legal entities," but argue that because Local 201 officials served on both the Apprenticeship Committee and the Training Program, "each [defendant entity] was a participant in the imposition of educational barriers to the admission of black rodmen into the union." They maintain, for instance, that "legal niceties aside," the "Local 201 business agent, the Training Committee and [its Director] in essence functioned as one entity in operating the program" in a discriminatory way.

The plaintiffs' argument is too facile; the distinct juridical personality of an entity is not merely a legal nicety. Unless there is strong evidence to the contrary, we must conclude that such boundaries were intended to have some meaning, and they are not to be casually disregarded. Here there is no basis whatsoever for departing from that norm. In support of their argument for joint liability, the plaintiffs have cited decisions made by the union officials in their capacity as members of the joint committees on the educational programs— *e.g.,* the bases for selection of apprentices and trainees, the high school diploma requirements of the Apprenticeship Program, when apprentices and trainees were ready to take the examination, and examination procedures. All of these decisions, however, related to the internal administration of those programs, which we did not hold to violate either Title VII or section 1981.

The *only* practice (along with acts of retaliation) that we held to violate Title VII or section 1981 was the local's requirement that experienced rodmen complete an educational program run by one of the two committees. The plaintiffs have pointed to no record evidence demonstrating that either the Training Program or the Apprenticeship Committee had any role (or any authority) relevant to that practice. Most significantly, the plaintiffs have not pointed to any findings by the district court that even arguably form an adequate predicate for holding these distinct entities liable jointly with Local 201 for the unilateral acts of that local.

The record before us supports only the conclusion that Local 201 and (by application of agency principles) the International are liable for the discrimination effected by the requirements that experienced rodmen complete an educational program. Given the unrebutted arguments presented in the petition for rehearing, we grant the petition and hold that the district court's conclusion that these three entities are jointly liable is a clear error and must be reversed.

*It is so ordered.*