**Ronald PHILBROOK,**
**Plaintiff–Appellant,**

**v.**

**ANSONIA BOARD OF EDUCATION, and Nicolas Collicelli, Dr. Charles J. Conners, Kenneth Eaton, William Eavens, Del Matricaria, and Susan Schumacher (as President), and Faith Tingley (as Secretary), individually and as members of said Board, Robert E. Zuraw, individually and as Superintendent of the Ansonia School System, and Ansonia Federation of Teachers, Local 1012,**

**AFL–CIO, and Josa Neves, Kathleen Roberts, Mary Ghirardini, Dennis Gleason, Dominick Brogolia, Maureen Wilkinson, and Georgette Williams, individually and as officers of said local, Defendants–Appellees.**

No. 538, Docket 89–7726.

United States Court of Appeals,
Second Circuit.

Argued Nov. 30, 1989.

Decided Jan. 25, 1991.

David N. Rosen, New Haven, Conn., for plaintiff-appellant.

Thomas N. Sullivan, Hartford, Conn. (Robert J. Murphy, Sullivan, Lettick & Schoen, Hartford, Conn., of counsel), for defendants-appellees Ansonia Bd. of Educ., Nicolas Collicelli, Dr. Charles J. Conners, Kenneth Eaton, William Eavens, Del Matricaria, Susan Schumacher, Faith Tingley, and Robert Zuraw.

James Ferguson, Berlin, Conn., for defendants-appellees Ansonia Federation of Teachers, Local 1012, AFL-CIO, Josa Neves, Kathleen Roberts, Mary Ghirardini, Dennis Gleason, Dominick Golia, Maureen Wilkinson, and Georgette Williams.

Before KEARSE, ALTIMARI, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff–Appellant Ronald Philbrook appeals from findings of fact and conclusions of law[1] of the United States District Court for the District of Connecticut, Thomas F. Murphy, *Judge*. The case involves a claim by plaintiff-appellant Ronald Philbrook of religious discrimination as to conditions of employment, in violation of 42 U.S.C. § 2000e–2(a) and (c) (1988),[2] with respect to the administration of the leave provisions of collective bargaining agreements between defendants-appellees Ansonia Board of Education (the "Board") and Ansonia Federation of Teachers, Local 1012, AFL–CIO (the "Union"). The initial round of the litigation terminated when the Supreme Court modified our decision to remand to the district court and directed that court to make "findings as to past and existing practice in the administration of the collective-bargaining agreements." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 71, 107 S.Ct. 367, 373, 93 L.Ed.2d 305 (1986). On remand, the district court concluded that the administration of the leave provisions of the collective bargaining agreements did not result in a statutory violation.

---

1. Apparently, despite the requirements of Fed.R. Civ.P. 58, no separate judgment was entered following the district court's entry of findings of fact and conclusions of law adverse to Philbrook's claims on July 18, 1989. Philbrook filed a notice of appeal "from the Findings of Fact and Conclusions of Law filed July 18, 1989" on July 21, 1989. We nonetheless conclude that a proper appeal has been taken from a "final decision[ ]" of a district court within the meaning of 28 U.S.C. § 1291 (1988), thus vesting this court with appellate jurisdiction. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam); *Fennell v. TLB Kent Co.*, 865 F.2d 498, 499 n. 1 (2d Cir. 1989).

2. 42 U.S.C. § 2000e–2(a) and (c) (1988) provides:

(a) It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

*       *       *       *       *       *

(c) It shall be an unlawful employment practice for a labor organization—
(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;
(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or
(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

On appeal, Philbrook contends that the findings of the district court "are inconsistent with the views and instructions of the United States Supreme Court and are, therefore, clearly erroneous." For the reasons that follow, we affirm the decision of the district court.

### Background

The background of this litigation is set forth in detail in published opinions of this court and the Supreme Court, *see Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476 (2d Cir.1985), *aff'd and remanded*, 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) ("*Philbrook*"), familiarity with which is assumed. Accordingly, although briefly recounting earlier developments, we focus herein on the facts as they pertain to the issue remaining on appeal.

Ronald Philbrook has taught typing and business at the Ansonia High School since 1962. In February 1968, he was baptized as a member of the Worldwide Church of God. Church teachings require that members refrain from secular employment on certain designated holy days. As a result, Philbrook must miss about six days of work a year.

The school's leave policy allows teachers to take eighteen days of paid "sick leave" a year.[3] This leave may be taken, however, not only for "personal illness and/or illness in the immediate family," but also for the following purposes, subject to the specified limitations as to the number of days allowable therefor:

1. Death in the immediate family ..... 5 day limit each time
2. Family funeral attendance .... 1 day each time
3. Friend funeral attendance .... 1 day each time—limit of 2 days per year
4. Immediate family wedding .... 1 day each time
5. Immediate family graduation .... 1 day each time

6. Immediate family religious ceremony (Ordination, Vows, Bar Mitzvah, Bas Mitzvah, First Communion, Baptism) ........ 1 day each time
7. Official delegate to national veterans organization .... 1 day per year
8. Official delegate (President and/or Business Agent) to national or state teachers organization .... 1 day per year—without charge
9. Official delegate (other than President and/or Business Agent)—(limit of 3) to national or state teachers organization .......... 1 day per year
10. Mandated religious observance ..... 3 days per year—without charge

    Those holidays which are required by and obligatory due to written denominational law shall be considered as authorized leave and shall not be charged to annual leave, including accumulated days. No annual leave, including accumulated days, shall be used for absence due to religious holidays in excess of three days per year.
11. Necessary personal business ....... 3 days total per year

    a. Necessary personal business (without approval) ................. 1 day per year

       Granted at the discretion of the professional staff member with 48 hour notification to the immediate supervisor. Professional staff member will note personal day on the form provided by Board of Education. In no case shall leave for personal business without approval be used to extend a weekend.

    b. Necessary personal business (with approval) ................ 2 days per year

       Professional staff member must request the days for personal business on a form provided by the Board of Education forty-eight (48) hours pri-

---

**3.** As we stated previously, "[t]he school board's leave policies, as outlined in collective bargaining agreements with the union [ (collectively the "Agreement") ], have changed over time." *Philbrook*, 757 F.2d at 478. Different versions of the Agreement are described at 757 F.2d 478–79, and the then-current version is set forth at *id.* 479 n. 2. Changes for the most part were minor, and are not material to the issue presented on this appeal.

or to such leave. Reasons for such leave must be stated in sufficiently detailed terms to apprise the Superintendent of the need for such leave, after taking into account the educational needs of the school system.

c. Exceptions regarding the forty-eight (48) hour notice provision, use of prepared forms, and extension of weekends may be made in cases of emergencies.

d. Necessary personal business shall not include (without limitations):

1. Marriage attendance or participation;

2. Day following marriage or wedding trip;

3. Attendance or participation in a sporting or recreational event;

4. Any religious observance;

5. Travel associated with any provision of annual leave;

6. Purposes set forth under annual leave or another leave provision of this contract.

Further, absences resulting from "any judicial proceeding in which the professional staff member is a plaintiff or defendant or is a witness under subpoena" or "due to jury duty" are considered as authorized leave and not charged to annual leave.

This appeal centers upon the categories entitled "mandated religious observance" and "necessary personal business." The key provisions are: (1) the "mandated religious observance" category permits three absences per year "without charge"[4] for "holidays which are required by and obligatory due to written denominational law," but "[n]o annual leave, including accumulated days, shall be used for absence due to religious holidays in excess of three days per year;" and (2) the "necessary personal business" category excludes absences for "[p]urposes set forth under annual leave or another leave provision of this contract," and for "[a]ny religious observance."

The Board refused to allow Philbrook to use his three "necessary personal business" days for paid leave for religious observance beyond the three-day limit. The Board also rejected Philbrook's offer to pay a substitute teacher, rather than being docked the considerably larger amount of a day's pay, for religious observance days in excess of the three allowed. Instead, the Board allowed Philbrook to take additional days, as required, in the form of unpaid leave.

After exhausting all available administrative avenues to contest the Board's decision, Philbrook filed a complaint in the United States District Court for the District of Connecticut against the Board and the Union which alleged that the foregoing practices and policies (1) "[have] operate[d] to deprive [Philbrook] of equal employment opportunity on account of his religion, in violation of 42 U.S.C. [§] 2000e–2(a) and (c), and defendant Union has failed to assist [Philbrook] fully in gaining relief from these unlawful practices;" and (2) "have operated to deprive [Philbrook] of his right to the free exercise of his religion and have operated as an establishment of religion, in violation of the First and Fourteenth Amendments to the United States Constitution." Philbrook sought both damages and injunctive relief.

In an unpublished opinion, the district court dismissed the complaint, ruling that Philbrook "has not been placed by the School Board or by the Union or any defendant officers thereof, in a position of violating his religion or losing his job."

On appeal, this court reversed, holding that Philbrook had established a prima facie case of religious discrimination. We assumed that the Board's leave policy constituted a reasonable accommodation to Philbrook's religious beliefs, *Philbrook,* 757 F.2d at 484, but ruled that "[w]here the employer and the employee each propose a reasonable accommodation, Title VII requires the employer to accept the proposal

---

4. We note that the only other categories of leave that are "without charge" against the eighteen-day annual leave allowance are those for court attendance as a party, witness, or juror, and one day per year as an official delegate (president and/or business agent) to a national or state teachers organization.

the employee prefers unless that accommodation causes undue hardship on the employer's conduct of his business." *Id.* The ruling was a gloss on 42 U.S.C. § 2000e(j) (1988), which provides that:

The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

Because the district court had not addressed all the issues which we deemed relevant, we remanded the case to the district court for further proceedings. 757 F.2d at 488.

The Supreme Court, however, granted certiorari. The Court addressed only the Title VII claim, observing that although Philbrook's complaint also alleged a violation of his free exercise rights under the first amendment, this court on appeal did not address the issue, and thus the Supreme Court had no occasion to do so. *Philbrook,* 479 U.S. at 65 n. 4, 107 S.Ct., at 370 n. 4.

The Court framed the issue before it as "whether the employer's proposed accommodation of [Philbrook's] religious practices comports with the statutory mandate of § [2000e(j)]." *Id.* at 68, 107 S.Ct. at 372. The Court rejected our ruling requiring recognition of an employee preference, absent undue hardship, finding "no basis in either the statute or its legislative history for requiring an employer to choose any particular reasonable accommodation." *Id.* at 68, 107 S.Ct. at 372. Rather, the Court held "that an employer has met its obligation under § [2000e(j)] when it demonstrates that it has offered a reasonable accommodation to the employee." *Id.* at 69, 107 S.Ct. at 372. Accordingly, the Court concluded that the "remaining issue in the case is whether the school board's leave policy constitutes a reasonable accommodation of Philbrook's religious beliefs." *Id.* at 70, 107 S.Ct. at 372.

Addressing this issue, the Court said: "We think that the school board policy in this case, requiring respondent to take unpaid leave for holy day observance that exceeded the amount allowed by the collective-bargaining agreement, would generally be a reasonable one." *Id.* at 70, 107 S.Ct. at 373. The Court added, however, that "unpaid leave is not a reasonable accommodation when paid leave is provided for all purposes *except* religious ones," because "[a] provision for paid leave 'that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free ... not to provide the benefit at all.'" *Id.* at 71, 107 S.Ct. at 373 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 75, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984)).

The Court concluded:

Whether the policy here violates this teaching turns on factual inquiry into past and present administration of the personal business leave provisions of the collective-bargaining agreement. The school board contends that the necessary personal business category in the agreement, like other leave provisions, defines a limited purpose leave. Philbrook, on the other hand, asserts that the necessary personal leave category is not so limited, operating as an open-ended leave provision that may be used for a wide range of secular purposes in addition to those specifically provided for in the contract, but not for similar religious purposes. We do not think that the record is sufficiently clear on this point for us to make the necessary factual findings, and we therefore affirm the judgment of the Court of Appeals remanding the case to the District Court. The latter court on remand should make the necessary findings as to past and existing practice in the administration of the collective-bargaining agreements.

*Id.*

On remand, the district court requested proposed findings of fact and conclusions of law from the parties before holding a hearing. The court then issued a brief memorandum, which stated in pertinent

part, "Defendants have submitted on November 9, 1987 ... proposed findings of fact and conclusions of law to which we have agreed and signed." The court added, however:

> We and plaintiff's counsel remain puzzled ... by the Supreme Court's direction that we should make the necessary findings as to the "past and existing practices in the administration of the Collective Bargaining Agreement." We surmise that this direction to the existing practice was based on its surmise that the Bargaining Agreement might have been changed since the date of the trial. If so, we should be advised and accordingly will conduct future hearings on that issue if the Agreement has been changed.

On May 4, 1989, the district court conducted an evidentiary hearing concerning the remand issue. Despite the limitation intimated in the foregoing quotation, however, evidence was received regarding the various versions of the Agreement and their administration dating back to 1973. Numerous personal leave request forms submitted by teachers were received in evidence.

Testimony was provided by the current superintendent of schools for the Ansonia public school system, Robert E. Zuraw, a former superintendent, Richard F. Nicolari, and the president of the Ansonia Federation of Teachers, Josa Neves. Zuraw, who approves leave requests, testified that "necessary personal business" leave may not be taken for reasons specified in the other leave provisions of the Agreement. In addition, he continued, the stated reason "has to be necessary, as far as being important, having some part in the persons [sic] family or personal life." Accordingly, not all requests for "necessary personal business" leave are approved. The "necessary personal business" leave day that is provided "without approval," although "at the professional staff member's discretion" and not requiring a prior specification of its purpose, still cannot be taken for a purpose otherwise specified in the contract. Further, the reason for taking the day is subject to inquiry after the fact to assure compliance with the Agreement. As a general rule, teachers who wish to take a day's leave for a non-qualifying reason may do so, but are not paid.

Nicolari's testimony did not vary in substance from Zuraw's regarding any of the foregoing. Nicolari stated that he would define "necessary personal business" to mean "necessary and essential as opposed to frivolous and recreational." Neves also confirmed Zuraw's testimony concerning the interpretation and administration of the various versions of the Agreement. Neves further testified that paid leave had been denied on the basis of the limitations specified in the Agreement, and that some teachers, aware of those limitations, had at the outset requested unpaid leave for nonconforming leave requests.

After the hearing, the district court issued the further findings of fact and conclusions of law that are the subject of this appeal. They closely parallel, but are not identical to, the findings and conclusions previously submitted by defendants and endorsed by the district court. The key findings of fact are:

> 10. "Necessary personal business" leave continues to be a limited purpose leave under the provisions of the current bargaining agreement.

> *   *   *

> 13. The thrust of the restrictions on the use of the three days of "necessary personal business" leave is to disallow the taking of such leave by any teacher for reasons for which leave is provided under other provisions of the Agreement.

> 14. The leave provisions treat the plaintiff equally with other teachers with respect to the use of "necessary personal business" leave.

The district court's conclusions of law were:

> 1. In *Ansonia Board of Education et al v. Philbrook*, 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986), the Supreme Court ruled that providing the plaintiff in this case with unpaid leave for religious observance beyond the amount of paid leave provided for that purpose in the

bargaining agreement constitutes a reasonable accommodation to the plaintiff's religious needs unless paid leave is provided for all purposes except religious ones.

2. Under the facts of this case, providing the plaintiff with unpaid leave for religious observance beyond the amount of paid leave allowed for that purpose under the collective bargaining agreement constitutes a reasonable accommodation to the plaintiff's religious beliefs.

This appeal followed.

### Discussion

#### A. *Standard of Review.*

Fed.R.Civ.P. 52(a) provides that "[f]indings of fact ... shall not be set aside unless clearly erroneous." "[U]nder the clearly erroneous standard, we may only reject findings by the trial court when we are left with the 'definite and firm conviction that a mistake has been committed.'" *Ottaviani v. State Univ.*, 875 F.2d 365, 375 (2d Cir.1989) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)), *cert. denied,* —— U.S. ——, 110 S.Ct. 721, 107 L.Ed.2d 740 (1990); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

In this case, the district court on remand initially adopted the findings of fact proposed by the Board. Verbatim adoption of findings prepared by prevailing parties has been criticized by the Supreme Court, *see, e.g., Anderson*, 470 U.S. at 571–72, 105 S.Ct. at 1510; *United States v. Marine Bancorporation*, 418 U.S. 602, 615 n. 13, 94 S.Ct. 2856, 2866 n. 13, 41 L.Ed.2d 978 (1974); *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656 & n. 4, 84 S.Ct. 1044, 1047 & n. 4, 12 L.Ed.2d 12 (1964), and by circuit courts. *See, e.g., Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1407–08 (D.C.Cir.) *on rehearing*, 852 F.2d 619 (D.C.Cir.1988), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1018 (1989); *see also* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2578, at 704–08 (1971 & Supp.1990).

As we have stated, however, "[t]his method of complying with Fed.R.Civ.P. 52(a) is frowned upon, but is not necessarily fatal." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 109 n. 2 (2d Cir.1987) (citation omitted).

After the remand hearing, furthermore, the district court issued new findings. Although these were also taken in large part from those proposed by the Board, modifications were made by the court. The Supreme Court has observed that when a court does not "simply adopt" a party's proposed findings, "the findings issued by the District Court represent the judge's own considered conclusions. There is no reason to subject those findings to a more stringent appellate review than is called for by the applicable rules." *Anderson*, 470 U.S. at 572–73, 105 S.Ct. at 1511.

#### B. *The Findings of the District Court.*

Philbrook contends that the district court's findings of fact did not squarely address the issue posed by the Supreme Court's remand, because "the only limitations the district court found on the scope of personal leave were the ones that the Supreme Court had already noted when it requested further findings from the district court: Personal leave is not permitted for uses otherwise specified in the contract." Accordingly, he asks this court to set aside the factual findings of the district court and decide the case in his favor.

We disagree. Far from missing the point of the remand, the district court directed its attention to the precise issue as to which the Supreme Court required further findings. As we view the matter, the Court was concerned whether the Agreement was essentially administered in accordance with its terms, or whether, on the contrary, "necessary personal business" leave "may [in practice] be used for a wide range of secular purposes in addition to those specifically provided for in the contract, but not for similar religious purposes." *Philbrook*, 479 U.S. at 71, 107 S.Ct. at 373. Accordingly, a determination that the Agreement is in fact administered

according to its terms addresses and settles the issue posed by the Court's remand.

The remand record not only supported, but compelled, that conclusion. There is *no* evidence in the remand record to support a finding that leave may be taken pursuant to the "necessary personal business" provision of the Agreement for all purposes except religious ones. Rather, such leave may be taken for any reason deemed by the relevant administrator to fall within this general category, with the limitation that such leave may not be taken for those activities otherwise specified in another leave provision, *whether religious in nature or not,* or for "[a]ny religious observance." [5] Thus, Philbrook is limited to three days of paid leave for mandated religious observance, and a colleague who is a delegate to a national veterans organization is limited to one day a year for activity in that capacity. Neither may take any leave for such activity under the "necessary personal business" category, whether or not there is available unused leave in that category. Either may take excess days for these purposes, but without pay. The only difference is that the delegate will be charged against his leave account for the single day that he is allowed to take, should he take it, but Philbrook will not be charged for any of the three days of mandated religious observance that he may take. *See supra* note 4.

The category of "necessary personal business" is, of course, somewhat nebulous, and thus requires judgment calls by the supervisors responsible for administering such leave. No showing was made on remand, however, that in doing so, there is any general animus towards activities that are religious in nature or purpose, or that leave is denied for such activities except as specifically provided by the Agreement.

Accordingly, no case is made that religious discrimination violative of 42 U.S.C. § 2000e–2(a) and (c) (1988) has occurred.

### Conclusion

The decision of the district court is affirmed.

---

**5.** We do not construe the prohibition of "necessary personal business" leave for "[a]ny religious observance" as erecting a general bar against any leave having a religious *purpose.* Nor, obviously, did the Supreme Court so read it, for the Court would hardly have remanded for findings concerning the *administration* of the Agreement if it deemed its very terms to require prohibited religious discrimination. The Agreement specifies, we note, that leave may be taken for "[i]mmediate family religious ceremony (Ordination, Vows, Bar Mitzvah, Bas Mitzvah, First Communion, Baptism)," as well as for family and friend funeral attendance and family weddings, thus making clear that the separately specified categories of "mandated religious observance" and "religious observance" do not exhaustively cover all activities having a religious purpose.