**Henry H. HALE, Plaintiff-Appellant,**

v.

**John O. MARSH, as Secretary of the Army, Defendant-Appellee.**

**No. 85–2942.**

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 20, 1986.

Decided Dec. 23, 1986.

---

**2.** Gary C. Van Schindel's contributions were not as great as those of the father in *Adams*. In that case, the father contributed $400 to the mother and allowed her to live rent free in his apartment. However, the father's opportunity for support was far greater in that case. The father was the operator of a Manhattan restaurant who lived until the seventh month of the pregnancy. *See Adams*, 521 F.2d at 660.

Henry H. Hale, pro se.

Ann L. Wallace, Asst. U.S. Atty. (Anton R. Valukas, U.S. Atty.), U.S. Atty's. Office, Chicago, Ill., for defendant-appellee.

Before POSNER and EASTERBROOK, Circuit Judges, and PELL, Senior Circuit Judge.

POSNER, Circuit Judge.

This appeal requires us to consider a question that has not arisen before at the appellate level: whether an employer who retaliates against *another employer's* employee for that employee's having opposed, charged, etc. unlawful discrimination against himself or somebody else violates the retaliation (sometimes called "participation") provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a).

Hale, a black employee of OSHA, helped a black woman employed by the Army

Corps of Engineers with her complaint of racial discrimination by the Corps. The personnel specialist who handled the matter for the Corps was so incensed by Hale's manner of pursuing the complaint that he wrote a letter of complaint to (among others) the head of OSHA. Though nothing happened to Hale as a result of the letter, he filed this Title VII suit against the Secretary of the Army. The district court dismissed the complaint for failure to state a claim, and Hale has appealed.

Technically the suit is under 42 U.S.C. § 2000e–16 rather than 2000e–3(a), because 2000e–16 is the only provision under which agencies of the federal government can be sued. However, 16 has been interpreted to incorporate 3(a). See *Ayon v. Sampson*, 547 F.2d 446, 449–50 (9th Cir. 1976). The government does not quarrel with this interpretation; for his part, Hale does not contend that, for purposes of 3(a), OSHA and the Army are a single employer—the United States. Cf. 42 U.S.C. § 2000e–16(c); *McGuinness v. United States Postal Service*, 744 F.2d 1318, 1322 (7th Cir.1984).

The language of section 2000e–3(a) is against Hale. It forbids "an employer to discriminate against any of *his* employees or applicants for employment" (emphasis added) because of opposition to discrimination, charging or assisting in a charge of discrimination, etc., and Hale is not an employee of the Army. The linguistic obstacle to this suit may be decisive in view of the principle, held applicable to section 2000e–16 in *Mares v. Marsh*, 777 F.2d 1066, 1068 (5th Cir.1985), that statutes waiving the federal government's sovereign immunity should be narrowly interpreted. We may assume, however, though without having to decide, that the linguistic obstacle could be overcome by a sufficiently strong showing that the policy embodied in the statute required that Hale be allowed to maintain a suit of this kind. Several courts have held that the policy of protecting employees from retaliation for assisting in the enforcement of Title VII requires interpreting the statute to apply to employees who quit before the act of retaliation occurred, see *Pantchenko v. C.B. Dolge Co.*, 581 F.2d 1052, 1055 (2d Cir.1978) (per curiam); *Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1165–66 (10th Cir.1977); cf. *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 142–46 (6th Cir.1977), though the language of section 2000e–3(a) is against this interpretation, too. However, no agency of the federal government was the employer in those cases. In any event the policy of the statute would not compel the recognition of a cause of action in the present case even if the defendant were a private employer; and this for several reasons:

1. Had Hale's own employer, OSHA, fired or taken other adverse action against Hale because he had helped someone enforce her rights under Title VII (and not just because of his uncivil manner of assisting, as in *Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 234 (1st Cir.1976)), OSHA would be guilty of violating the retaliation provision. Nothing in that provision suggests that the person assisted need be a fellow employee of the person retaliated against. See *Barela v. United Nuclear Corp.*, 462 F.2d 149, 152 (10th Cir.1972). Since Hale has a good remedy, should he need one, against his employer, there is no reason to create a remedy against a different employer under a statute that does not contemplate the additional remedy.

2. Where an action will not lie against the employer of the assisting employee, because that employer has not retaliated, the employee hasn't been hurt—not much, anyway. If there were no actual or threatened harm at all, the employee would have no standing to sue. The existence of the letter is, however, itself a harm of sorts; that is the conception of harm that underlies the Privacy Act, 5 U.S.C. § 552a, which allows federal employees to get their personnel records corrected. But it is not so serious a harm as to require our stretching the language of section 2000e–3(a) to create a cause of action for attempted retaliation.

■ 3. *Stoller v. Marsh*, 682 F.2d 971, 979 (D.C.Cir.1982), holds that the employing agency can protect itself from liability under Title VII by establishing procedures by which the employee can correct inaccurate statements in his personnel file. A correlative proposition is that if Hale can get any inaccuracies in the letter from the Army corrected (assuming the letter is in his personnel file at OSHA) but has not attempted to do so, a Title VII suit against either agency would be premature—doubly premature when we consider that OSHA, Hale's employer, has taken no action against him. Hale has not told us what if any administrative procedures of correction he may have within OSHA.

■ 4. Title VII is not a comprehensive tort statute and its remedies are not suitable for the type of action that Hale is trying to maintain. The most common remedy in a Title VII suit is reinstatement; but even if OSHA had fired Hale, a court could not order the Army to reinstate him even if the Army had caused his firing. (Maybe the Army could be ordered to give him backpay, though. See *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338, 1342 (D.C.Cir.1973).) The only remedy under Title VII that Hale could conceivably get in a case like this—since he was not fired, demoted, etc., and since damages cannot be awarded under Title VII, see 42 U.S.C. §§ 2000e–5(g), 16(d); *Bohen v. City of East Chicago*, 799 F.2d 1180, 1184 (7th Cir.1986); compare *Harless v. First Nat'l Bank*, 169 W.Va. 673, 685–90, 289 S.E.2d 692, 700–02 (1982)—would be an order expunging the offending letter from OSHA's files and forbidding OSHA ever to take any adverse action against him on the basis of the letter. Cf. *Smith v. Secretary of Navy*, 659 F.2d 1113, 1122 (D.C.Cir.1981). But the predicate for such relief would be a showing that OSHA was about to take action on the basis of the letter, and Hale has made no such showing. Even more important, the relief sought would be against OSHA rather than the Army. The Army cannot be ordered to alter the records of another agency or to prevent that agency from firing one of its own employees. Thus it

seems that in this case no form of judicial relief could be obtained against the retaliator itself, as distinct from the plaintiff's employer. This circuit does not permit a Title VII suit to be maintained for the sole purpose of obtaining an attorney's fee for the plaintiff's lawyer. *Bohen v. City of East Chicago, supra*, 799 F.2d at 1184. We cannot see what else is at stake in this case.

■ 5. Even the common law tort of retaliatory dismissal has not been extended to cases where the retaliator is not the victim's employer; why should section 2000e–3(a) be so extended? Although such cases are sometimes brought as suits for third-party interference with contractual or other advantageous business relations, the plaintiff in such a case must show interference, which Hale cannot do, because his employment with OSHA has not been affected by Marsh's letter. See, e.g., *Geyer v. Steinbronn*, 351 Pa.Super. 536, 552, 506 A.2d 901, 910 (1986); *Herman v. Endriss*, 187 Conn. 374, 446 A.2d 9 (1982); *Cline v. McLeod*, 180 Ga.App. 286, 292, 349 S.E.2d 232, 237 (1986); *Herman v. Prudence Mutual Casualty Co.*, 41 Ill.2d 468, 472–78, 244 N.E.2d 809, 812–14 (1969); *Challen v. Town & Country Charge*, 545 F.Supp. 1014, 1017 (N.D.Ill.1982). Anyway, section 2000e–3(a) is not drafted in terms of interference with contractual relations. Courts have less freedom in interpreting statutory texts than in interpreting common law concepts, yet Hale asks us to take greater liberties with the text of section 2000e–3 than common law courts have been willing to take with the common law torts of wrongful discharge and interference with contract. The interest he asserts is too tenuous, legally and factually, to warrant an adventurous interpretation of the retaliation provision of Title VII. See *Asklar v. Honeywell, Inc.*, 95 F.R.D. 419, 424–25 (D.Conn.1982).

■ 6. The EEOC believes that a claim will not lie in the circumstances of this case. Its view is entitled to weight. See *Local No. 93, Int'l Ass'n of Firefight-*

*ers v. City of Cleveland,* —— U.S. ——, 106 S.Ct. 3063, 3073, 92 L.Ed.2d 405 (1986); *Horn v. Duke Homes,* 755 F.2d 599, 604 n. 6 (7th Cir.1985); *Stewart v. Hannon,* 675 F.2d 846, 849 (7th Cir.1982); *Eirhart v. Libbey-Owens Ford Co.,* 616 F.2d 278, 281–82 (7th Cir.1980). We know all about the canon of statutory construction that remedial statutes, such as the Civil Rights Act of 1964, should be construed liberally, but the canon can make the difference only in a close case, which we do not conceive this to be. Otherwise, "remedial" statutes would expand without limit. Moreover, countercanons are in play: the canon just mentioned that an administrative agency's interpretation of its organic statute is entitled to some deference, and the canon mentioned earlier that waivers of sovereign immunity are to be interpreted narrowly.

AFFIRMED.