644 A.2d 112

WILLIAM CRAIG, ELLEN CHAPMAN, WILLIAM DENINO, AND ELLEN MARSILLO, PLAINTIFFS–APPELLANTS, AND SUSAN CHAPMAN, PLAINTIFF, v. SUBURBAN CABLEVISION, INC., FRANK DEJOY, JANE BULMAN AND GREGORY VANDER-VORT, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted October 19, 1993—Decided June 20, 1994.

Before Judges MICHELS, SKILLMAN and KESTIN.

*Gerald Jay Resnick,* attorney for appellants (*Mr. Resnick,* on the brief).

*Apruzzese, McDermott, Mastro & Murphy*, attorneys for respondents (*Jerrold J. Wohlgemuth*, on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

Alleging wrongful discharge from their employment and subsequent interference with their employment opportunities, plaintiffs filed an eleven-count amended complaint seeking relief on the basis of the New Jersey Constitution, under the Law Against Discrimination (LAD or Act), *N.J.S.A.* 10:5–1 *et seq.*, and pursuant to various common law causes of action. On defendants' *R.* 4:6–2(e) motion to dismiss all counts but the eighth, which alleged age discrimination in respect of plaintiffs Ellen Chapman and Craig, the trial court dismissed counts one through six of the amended complaint. The dismissed counts asserted retaliatory discharge in violation of *N.J.S.A.* 10:5–12d and, alternatively, in violation of public policy and as an unconstitutional deprivation of property; breach of employment contract; breach of implied covenant of good faith and fair dealing; and fraudulent misrepresentation. We granted the motion of plaintiffs Craig, Ellen Chapman, Denino and Marsillo for leave to appeal as to the dismissal of counts one through five, *i.e.*, all except fraudulent misrepresentation.

Defendants contend that the trial court's rulings dismissing counts one through five of the amended complaint should be governed by summary judgment standards because both parties, in arguing their respective positions on defendants' motion to dismiss relied on matter outside the pleadings. It is clear, however, that the trial court's disposition of the retaliatory discharge claim based on statutory, public policy and constitutional grounds was addressed only to the pleadings. We agree, nevertheless, that in dismissing plaintiffs' claims for breach of contract (counts four and five), the trial court properly treated the motion as one for summary judgment.

In evaluating the trial court's *R.* 4:6–2(e) dismissal of the retaliatory discharge claim, *i.e.*, for failure to state a claim upon

which relief can be granted, we must confine ourselves narrowly to the issues appropriate to such a consideration, and take as true for the purposes of the motion plaintiffs' factual allegations contained in the amended complaint as fairly elaborated upon in the motion papers. *Rieder v. State Dep't of Transp.*, 221 *N.J.Super.* 547, 552, 535 *A.*2d 512 (App.Div.1987) ("A complaint should not be dismissed under this rule where a cause of action is suggested by the facts and a theory of actionability may be articulated by way of amendment.").

Plaintiffs were employees of Suburban Cablevision, Inc. (Suburban) in its door-to-door sales department (department) until the department was eliminated in August 1989. In March 1988, plaintiff Susan Chapman, a supervisor in the department, had filed a gender and handicapped employment discrimination suit against Suburban in federal court. Plaintiffs allege that, after the suit was filed, Suburban's management began to treat all the plaintiffs adversarially, and that changes were made in the department and in Suburban's policies which were designed to harass plaintiffs and retaliate against them because Susan Chapman had filed her suit. Plaintiffs allege further that as the federal litigation progressed, management's animosity toward the department's staff grew.

On July 14, 1989, defendant DeJoy, president of Suburban, announced to plaintiffs and other department employees that the department was to be closed on August 18 because door-to-door sales were no longer an effective or economically sensible means of promoting cable television subscriptions. A severance package was presented; and all department employees were invited to apply for other jobs in the company for which, they were told, they would be given preference. When some of the plaintiffs looked further into the reemployment offer, they discovered that the jobs available paid lower salaries and no commission. Also, plaintiffs allege, they were given to believe that, simply by applying for an available position, those affected would relinquish their claim to the severance package. Each of the plaintiffs elected to take the severance package and their employment with Suburban

was terminated as of August 18, 1989.[1] Plaintiffs allege further, that notwithstanding the reasons given for elimination of the department, Suburban reinstituted door-to-door sales activities eighteen months later through a contract with an independent sales marketing company and by other means.[2]

With respect to the status of each appealing plaintiff, the amended complaint alleges that Ellen Chapman was the manager of the department and Susan Chapman's mother; that Ellen Marsillo is Ellen Chapman's daughter and Susan Chapman's sister; and that plaintiffs Ellen Chapman, Craig, Denino and Marsillo were long-term employees of Suburban, employed in the door-to-door sales department. Although not specifically pleaded, the allegations of plaintiffs Craig and Denino that they were close friends of Susan Chapman, as well as coworkers of long standing, were also before the trial court on defendants' motion to dismiss.

In dismissing plaintiffs' causes of action under the LAD, as a matter of public policy, and under the New Jersey Constitution, the trial court cryptically opined that if the claim for retaliatory discharge had been brought by Susan Chapman, it would not be subject to dismissal on an *R.* 4:6–2(e) motion because "she would certainly have a right to do so [on] the basis that she was the subject of retaliatory actions." The remaining plaintiffs, in the trial court's view, had no such right, *i.e.*, no standing to make a claim for retaliatory discharge.

---

[1] On July 10, 1989, plaintiff Ellen Chapman had notified Suburban of her intention to retire on August 1. It appears that she was considered eligible for the severance package as well as for her pension.

[2] Other conduct by defendants, cited as directly pertinent to claims of interference with business affairs, contractual relations, and prospective economic advantage, as well as defamation, none of which are before us in this appeal, was also referred to in the trial court as an intended element of proof on the retaliation claim. The contention is that when plaintiffs Susan Chapman, Denino and Marsillo responded to an advertisement for employees placed by the contractor they were immediately hired because of their experience, but lost the jobs when defendants discovered they had been hired and instructed the contractor to terminate their employment.

We granted leave to appeal primarily to determine whether these plaintiffs[3] have standing to litigate a claim for retaliatory discharge under *N.J.S.A.* 10:5–12d, or as a matter of public policy, or under the New Jersey Constitution. More specifically, the question is whether coworkers or coemployed relatives, by reason of such relationships alone, have standing to raise the protection against reprisals that the LAD, at the time of the events here in 1989, conferred upon "any person because he has opposed any practices or acts forbidden under this act or because he has filed a complaint, testified or assisted in any proceeding under this act." [4] *N.J.S.A.* 10:5–12d.

■ We begin with the Legislature's directive "that this act shall be liberally construed in combination with other protections available under the laws of this State," *N.J.S.A.* 10:5–3, and frequent references in judicial opinions to the remedial objectives of the LAD and the breadth with which its policies are to be applied in the light of its overall design. *E.g., Jackson v. Concord Co.*, 54 *N.J.* 113, 121–125, 125–128, 253 *A.*2d 793 (1969). *Cf. Mitchell v. Robert De Mario Jewelry, Inc.*, 361 *U.S.* 288, 80 *S.Ct.* 332, 4 *L.Ed.*2d 323 (1960). This approach must inform a court's understanding of any right claimed under the Act, whether in a proceeding in the Division on Civil Rights or pleaded in a complaint in the Superior Court pursuant to *N.J.S.A.* 10:5–13.

■ The statutory right claimed by plaintiffs under *N.J.S.A.* 10:5–12d is clearly stated. It literally protects "any person" from reprisals in contexts having the necessary relationship to the Act's

---

[3] Plaintiff Susan Chapman, having settled her discrimination suit with a release waiving any and all claims concerning the August 1989 termination of her employment, did not join in the counts of the complaint which are before us on this appeal.

[4] By L.1992, c. 146, § 9, the following language was added to the foregoing provision: "or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act."

objectives and administration, whether that person has "filed a complaint" under the Act, has "testified or assisted in any proceeding" under the Act, or "has opposed any practices or acts forbidden" by the Act. It is clear then, contrary to the trial court's apparent understanding, that the protection against retaliation embodied in the LAD is broad and pervasive, and must be seen as necessarily designed to promote the integrity of the underlying antidiscrimination policies of the Act by protecting against reprisals "any person" who has sought to protect his or her own rights not to be discriminated against or who has acted in support of such conduct.

Viewed in this light, it is of little importance in respect of standing whether the person retaliated against has allegedly been the victim of a prohibited act of discrimination or is one who has acted in sympathy with a victim. It may be, also, that the relationship between the person accused of the retaliatory conduct and the individual who is the object of the reprisal is jurisdictionally insignificant. Nothing expressed in the terms of *N.J.S.A.* 10:15–12d suggests that a reprisal, in order to be actionable, must have been taken against an employee.[5] Nevertheless, the least meaning of *N.J.S.A.* 10:5–12d must be the protection of employees against retaliation by their employers. We need not, in this case, address the question whether a person who has the power to visit adverse consequences upon persons other than employees because of their conduct supporting one who has filed an employment discrimination complaint may expect to respond in a suit for damages filed pursuant to *N.J.S.A.* 10:5–13. *See e.g., Hale v. Marsh,* 808 *F.*2d 616 (7th Cir.1986), in the negative on the general

---

[5] Such an argument might have been available under the language of the LAD prior to 1966 when this section of the Act proscribed as "an unlawful employment practice, or ... an unlawful discrimination ... [f]or any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices or acts forbidden under this act or because he has filed a complaint, testified or assisted in any proceeding under this act." L.1945, c. 169, § 11. The current language was substituted by L.1966, c. 17, § 4.

proposition. It is clear that the plaintiffs in this case may not, solely as a matter of status, be deprived of their right to invoke the protections of the LAD through *N.J.S.A.* 10:5–12d. The question remains, however, whether, by reason of other eligibility criteria, *i.e.*, the conduct giving rise to the retaliation or some equivalent consideration, they meet the requirements for protection.

Although not alleged in the complaint, it was undisputed for the purposes of defendants' motion that Ellen Chapman participated as a witness in support of her daughter's federal court claim. None of the other plaintiffs assert that they testified or assisted in Susan Chapman's lawsuit; nor are there alleged any specific instances of opposition by any plaintiff to discriminatory practices or acts of Suburban, its managers or principals. Consequently, none of the plaintiffs other than Ellen Chapman have any basis in fact for asserting a right against reprisals based upon their own conduct. Nevertheless, the plaintiffs contend they are within the scope of the protections of *N.J.S.A.* 10:5–12d because Suburban's motivation in abolishing their positions and engaging in other harmful acts was retaliation for the conduct of their colleague, friend or relative, Susan Chapman, in filing an employment discrimination action.

Manifestly, a person seeking the protection of the LAD could be as effectively discouraged from doing so by the prospect of retaliatory conduct against those close to him or her as by apprehending a direct reprisal. *See EEOC v. Ohio Edison Co.,* 7 *F.*3d 541 (6th Cir.1993); *Marshall v. Georgia Southwestern College,* 489 *F.Supp.* 1322, 1331 (M.D.Ga.1980), *aff'd in part and remanded on other issues, sub nom. Brock v. Georgia Southwestern College,* 765 *F.*2d 1026 (11th Cir.1985). Although the language of *N.J.S.A.* 10:5–12d indicates that the legislature did not expressly consider "the possibility of third-party reprisals—*i.e.*, discrimination against one person because of a friend's or relative's protected activities", *De Medina v. Reinhardt,* 444 *F.Supp.* 573, 580 (D.D.C.1978), any more than Congress did in enacting a

comparable but arguably narrower protection, 42 *U.S.C.A.* § 2000e–3(a),[6] as part of Title VII of the Civil Rights Act of 1964, "the very clear intent of [the Legislature] would be undermined by the construction defendant suggests," *De Medina v. Reinhardt, supra,* 444 *F.Supp.* at 580, *i.e.,* that plaintiffs are not persons protected against reprisals by defendants. As with the intent of Congress in enacting 42 *U.S.C.A.* § 2000e–3(a), we view our Legislature as having

> unmistakably intended to ensure that no person would be deterred from exercising ... rights under [the statute] by the threat of discriminatory retaliation. Since tolerance of third-party reprisals would, no less than the tolerance of direct reprisals, deter persons from exercising their protected rights ... the Court must conclude ... that [the statute] proscribes the alleged retaliation of which plaintiff complains.
>
> [*De Medina v. Reinhardt, supra,* 444 *F.Supp.* at 580.]

*See also EEOC v. Ohio Edison Co., supra,* 7 *F.*3d 541; *Mandia v. Arco Chem. Co.,* 618 *F.Supp.* 1248 (W.D.Pa.1985) (plaintiff found not to have carried his burden of proof; judgment for defendant); *Clark v. R.J. Reynolds Tobacco Co.,* 27 Fair Empl.Prac.Cas. (BNA) 1628, 1982 WL 2277 (E.D.La. Feb. 2, 1982); *Marshall v. Georgia Southwestern College, supra,* 489 *F.Supp.* 1322; *United States v. City of Socorro,* 25 Fair Empl.Prac.Cas. (BNA) 815, 1976 WL 523 (D.N.M. Jan. 9, 1976); *Kornbluh v. Stearns & Foster Co.,* 73 *F.R.D.* 307 (S.D.Ohio 1976); *cf. Marinhagen v. Boster, Inc.,* 17 *Kan.App.*2d 532, 840 *P.*2d 534, 541 (1992) (third party held to have standing to claim retaliatory discharge as a relative of the claimant in a workers' compensation action). *But see Hale v. Marsh, supra,* 808 *F.*2d 616 (Title VII retaliatory discharge suit held not to lie against third party employer).

In order that the LAD's objectives might be more certainly attained, coworkers or coemployed relatives of an employee who

---

[6] "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

has asserted rights under the Act must be seen as having standing to litigate a claim that they have suffered retaliation because of the acts of the coemployee rather than their own supportive conduct. This derivative right must be seen as coextensive with the protections against reprisal conferred upon the discrimination claimant.

Plaintiffs will find it no easier to sustain their burdens of proof on their claims of retaliatory discharge than would anyone else with a more ordinary, direct reprisal cause of action. *See Jamison v. Rockaway Township Bd. of Educ.*, 242 *N.J.Super.* 436, 577 *A.*2d 177 (App.Div.1990). We decide only that where they have filed suit pleading the type of reprisal prohibited by *N.J.S.A.* 10:5–12d, and have alleged a palpable factual basis for their claim, including a personal relationship with a person who has pursued her rights under antidiscrimination legislation, they may not be nonsuited on an *R.* 4:6–2(e) motion. *EEOC v. Ohio Edison Co., supra,* 7 *F.*3d at 546; *De Medina v. Reinhardt, supra,* 444 *F.Supp.* at 581. Plaintiffs are entitled to an opportunity to advance their proofs and, if they make the necessary showings in the face of defendants' rights to discharge at-will employees for reasons not prohibited by *N.J.S.A.* 10:5–12d, to have a jury determine whether defendants' actions in respect of these plaintiffs were intended as a retaliatory response to Susan Chapman's conduct in pursuing her discrimination claim. In this connection, the first proof element of *Jamison, supra,* 242 *N.J.Super.* at 445, must be modified to suit the circumstances of this type of third party reprisal claim. In the absence of a showing that he or she "engaged in a protected activity known to the employer", *ibid.,* each plaintiff will be obliged to establish that the quality of his or her relationship with Susan Chapman (who had undeniably engaged in a protected activity) as known to any defendant was such as to create a reasonable inference that the defendants' conduct was undertaken as a reprisal for the protected activity. *See Kornbluh v. Stearns & Foster Co., supra, 73 F.R.D.* at 312. The two remaining proof elements of Jamison will need to be satisfied

in their terms. Of course, defendants are not precluded from testing the adequacy of plaintiffs' claims on a motion for summary judgment based on fuller discovery.

Because we have determined that plaintiffs have standing to litigate their claims for retaliatory discharge under *N.J.S.A.* 10:5–12d, we need not address the existence of their independent right to do so under the New Jersey Constitution or as a matter of public policy. *O'Keefe v. Passaic Valley Water Comm'n,* 132 *N.J.* 234, 240, 624 *A.*2d 578 (1993). With respect to the plaintiffs' claims for violation of their rights under an employment contract, *Woolley v. Hoffmann–LaRoche, Inc.,* 99 *N.J.* 284, 491 *A.*2d 1257, *modified,* 101 *N.J.* 10, 499 *A.*2d 515 (1985), and the alleged breach of the implied covenant of good faith and fair dealing, we affirm the dismissal of counts four and five substantially for the reasons articulated by the trial judge in his oral decision at motion arguments on April 16, 1993.

Affirmed in part; reversed in part. Count one of the amended complaint is reinstated and the matter is remanded to the trial court.