**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1773
_____

AURELIA LAPAZ,
Appellant

v.

BARNABAS HEALTH SYSTEM; MARY FURO; MARYELLEN WIGGINS;
HELEN HARTNEY; AMY DORAN; PAMELA MICHELLI; JOHN DOES 1-10;
JANE DOES 1-10; ABC CORPORATIONS A THROUGH Z;
NEWARK BETH ISRAEL MEDICAL CENTER
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 2-13-cv-04584)
District Judge:  Honorable Stanley R. Chesler
_____

Submitted Under Third Circuit LAR 34.1(a)
November 13, 2015
_____

Before: CHAGARES, RENDELL and BARRY, <u>Circuit Judges</u>

(Opinion Filed: December 16, 2015)
_____

OPINION[*]
_____

_____

[*]  This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

BARRY, <u>Circuit Judge</u>

Aurelia LaPaz appeals the District Court's order granting summary judgment in favor of her employer, Newark Beth Israel Medical Center ("NBIMC"), and related defendants, on her employment discrimination, retaliation, defamation, slander, and libel claims. We will affirm.

I.

LaPaz was a registered nurse at NBIMC. As part of her job, LaPaz was required to sign an "inventory of controlled substances" log to certify that she had conducted a required "narcotics count" each day at the beginning of her shift, at 7:00 a.m., and again at the end of her shift, at 7:00 p.m. On the afternoon of February 27, 2013, an employee noticed that LaPaz had already signed the log to signify that she had completed the 7:00 p.m. count, although it was not yet 7:00 p.m. When confronted with the log, LaPaz admitted orally and in writing that she had signed the log early because she did not want to forget to sign it later on. Citing its policy that falsification of documents is a terminable offense, NBIMC requested and received LaPaz's resignation. LaPaz, an Asian woman of Filipino descent, was over 40 years old when she was asked to resign.

In July 2013, LaPaz filed this action against Barnabas Health System, NBIMC, and various individual defendants, claiming race, national origin, age discrimination, and unlawful retaliation. LaPaz alleged that other nurses who were Caucasian and African-American had, at times, failed to sign the log at the end of their shift, but were not forced to resign, and that she was replaced by a younger nurse. She also alleged that she was

2

asked to resign in retaliation for her support of another employee who had recently been terminated for sleeping on the job. In addition, she alleged that by accusing her of falsification, the defendants were liable for defamation, slander, and libel.[1]

On January 28, 2015, the District Court granted defendants' motion for summary judgment. The Court stated that even assuming for purposes of analysis that LaPaz had stated a prima facie claim of discrimination, she presented no evidence "whatsoever" to suggest that she was asked to resign for a discriminatory reason. (App. 398.) The Court pointed out that LaPaz had failed to identify other employees who she alleged had been treated differently and that, in any case, failure to sign the log was different than falsifying the log. The Court rejected LaPaz's argument that the log lacked significance and observed that it was undisputed that falsifying a document was a terminable offense at NBIMC. The Court also held that LaPaz's retaliation claim failed because she had not engaged in a "protected activity," and that her defamation, libel, and slander claims failed because the fact that LaPaz had falsified the log was true. This appeal followed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C §§ 1331 and 1367, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's order granting summary judgment, applying the same standard as the

---

[1] LaPaz also brought claims for interference with economic advantage and future job prospects, violations of the U.S. and New Jersey Constitutions and the New Jersey Civil Rights Act, and violations of internal NBIMC policies. Because LaPaz raises no argument on appeal with respect to these claims, we need not address them. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).

district court. Mandel v. M&Q Packaging Corp., 706 F.3d 157, 164 (3d Cir. 2013). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts in the light most favorable to the nonmoving party, drawing all inferences in that party's favor. Mandel, 706 F.3d at 164.

### III.

We analyze LaPaz's claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the New Jersey Law Against Discrimination ("NJLAD"), under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 300 (3d Cir. 2004); Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999); Battaglia v. United Parcel Serv., Inc., 70 A.3d 602, 619 (N.J. 2013). Under this framework, to establish a prima facie case of discrimination, the employee must show that "(1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] sought to attain or retain; (3) [she] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).

We review LaPaz's retaliation claim under the same framework. Battaglia, 70 A.3d at 619. The NJLAD makes it illegal "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act[.]" N.J. Stat. Ann. 10:5–12(d). To set forth a prima facie case of retaliation, the employee

4

must demonstrate that she engaged in a protected activity that was known to the employer, that she was subjected to an adverse employment decision, and that there is a causal link between the activity and the adverse action. Battaglia, 70 A.3d at 619.

Under the McDonnell Douglas analysis, if the plaintiff establishes a prima facie case, the burden then shifts to the employer "to articulate a legitimate, non-discriminatory reason for the adverse employment action." Makky, 541 F.3d at 214. When the employer articulates a legitimate, non-discriminatory reason for its action, the plaintiff, to survive summary judgment on claims of discrimination, "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). In the case of retaliation, "the plaintiff must come forward with evidence of a discriminatory motive of the employer, and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive." Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1142 (N.J. App. Div. 1995).

Here, the District Court correctly applied the McDonnell Douglas analysis and properly rejected LaPaz's discrimination and retaliation claims. With respect to retaliation, LaPaz failed to establish a prima facie case because she did not demonstrate that she had engaged in "protected activity" for purposes of the NJLAD. The NJLAD protects employees from retaliation for having opposed unlawful discrimination. See

5

N.J. Stat. Ann. 10:5–12(d). LaPaz's actions in support of her co-worker, who was fired for sleeping on the job, did not constitute protected activity. See Quinlan v. Curtiss-Wright Corp., 8 A.3d 209, 221 (N.J. 2010) (holding that the LAD's retaliation provision protects a person "who has sought to protect his or her own rights not to be discriminated against or who has acted to support such conduct" (quoting Craig v. Suburban Cablevision, Inc., 644 A.2d 112, 115 (N.J. App. Div. 1994))).

Even if LaPaz could establish a prima facie case of retaliation, and even assuming, as did the District Court, that she stated a prima facie case of discrimination based on race, national origin, or age, the Court correctly concluded that she failed to present any evidence that NBIMC's legitimate, non-discriminatory reason for requesting her resignation was unworthy of credence or a pretext for retaliation or discrimination. See Fuentes, 32 F.3d at 765 ("[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'"). Although LaPaz alleged that other nurses were not terminated for failing to sign the log at the end of their shifts, such allegations do not support her discrimination claims because there is no evidence in the record to establish whether these nurses were similarly situated to LaPaz, and because failing to sign the log at all is categorically different from "pre-signing" the log. See Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000) (observing that when a plaintiff claims to have been disciplined more harshly than other employees for a "prohibited reason," she

6

must demonstrate that she is "similarly situated with respect to performance, qualifications, and conduct").

LaPaz's primary argument is that her conduct could not have been the true reason for her employer's action because the log was meaningless, in light of the employer's electronic method of counting narcotics. But even if LaPaz is correct that the log was meaningless and signed only out of habit, however, there is simply no evidence in the record from which a factfinder could conclude that her failure to sign the log was not the real reason for her employer's adverse action. See Jones, 198 F.3d at 413 (holding that to survive summary judgment, the plaintiff must demonstrate "that the employer's articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." (internal quotation marks omitted)). LaPaz "must do more than show that [her employer] was 'wrong or mistaken'" in seeking her resignation. See Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006). The issue is "whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. Because LaPaz has presented no evidence from which a reasonable fact finder could conclude that her employer was motivated by discriminatory or retaliatory animus, and no evidence that her employer's proffered reason for its adverse action is unworthy of credence, the Court correctly granted summary judgment on her discrimination and retaliation claims. [2]

We likewise conclude that summary judgment was proper on LaPaz's claims for

---

[2] In light of the foregoing, we need not address whether the District Court erred in determining that LaPaz failed to administratively exhaust her age discrimination claim.

defamation, slander, and libel, because the statements at issue—statements that LaPaz had "falsified" the log—were true. See G.D. v. Kenny, 15 A.3d 300, 316 (N.J. 2011) ("[T]ruth is a defense to a defamation action . . . ."); Dairy Stores, Inc. v. Sentinel Pub. Co., Inc., 516 A.2d 220, 224 (N.J. 1986) ("A defamation action . . . encompasses libel and slander . . . .").

## IV.

We will affirm the order of the District Court.