**Yuri D. VEPRINSKY, Plaintiff–
Appellant,**

v.

**FLUOR DANIEL, INC. Defendant–
Appellee.**

No. 95–2197.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1996.

Decided June 26, 1996.

Thomas C. Crooks (argued), Chicago, IL, for plaintiff-appellant.

David J. Rowland (argued), Gloria M. Portela, Elizabeth H. Skalitzky, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendant-appellee.

Gwendolyn Young Reams, Carolyn L. Wheeler, Mary L. Clark, C. Gregory Stewart, E.E.O.C., Office of General Counsel, Washington, DC, for amicus curiae E.E.O.C.

Before RIPPLE, MANION, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Yuri Veprinsky filed a charge with the Equal Employment Opportunity Commission in 1991 alleging that Fluor Daniel had discharged him from its employ on the basis of his national origin and religion, in violation of Title VII of the Civil Rights Act of 1964. He subsequently alleged in this lawsuit that Fluor Daniel had retaliated against him in several ways for filing the charge. The district court granted summary judgment in favor of Fluor Daniel on two of the retaliation claims and denied Veprinsky leave to add another to his complaint, relying in part upon our perceived holding in *Reed v. Shepard*, 939 F.2d 484, 493 (7th Cir.1991), that post-termination incidents of retaliation are not actionable under Title VII. *See Koelsch v. Beltone Elec. Corp.*, 46 F.3d 705, 709 (7th Cir.1995). Today we clarify our decision in *Reed* and hold that post-termination acts of retaliation that adversely affect the plaintiff's employment opportunities or are otherwise related to employment are cognizable under Title VII.

## I.

Fluor Daniel hired Veprinsky as an electrical engineer in 1986, but with the exception of a one-week period, Veprinsky rendered no services to the company and was on unpaid status until early 1990, when he was upgraded to full-time employment. In June of 1991, Veprinsky's superiors in the electrical engineering department informed him that he would be terminated effective July 12, 1991, due to a lack of work.

In September 1991, Veprinsky filed a charge with the EEOC alleging that Fluor Daniel had discharged him (and declined his request to be placed on leave of absence status) on the basis of his national origin and religion, in violation of Title VII. Veprinsky hails from Russia and is Jewish. He alleged that Donald Hamady, who supervised him during his final assignment at Fluor Daniel, had made disparaging remarks about foreign-born people in general and about Russians in particular. In addition, Hamady had allegedly told Veprinsky a story about a Turkish colleague whose daughter had married a Jewish person, describing the marriage as "a tragedy in the family."

After the EEOC issued a right-to-sue letter, Veprinsky filed suit in the district court. Ultimately Veprinsky abandoned his claim of religious discrimination. The national origin discrimination claim was tried to Judge Kocoras, who found in favor of Fluor Daniel. Veprinsky does not challenge that finding.

Veprinsky also alleged that, following his discharge, Fluor Daniel took several adverse actions against him in retaliation for having filed the EEOC charge. These included providing false information to Veprinsky's subsequent employer, refusing to consider rehiring him for another position, and informing the placement firm with which Veprinsky was working that he had filed the EEOC charge. Veprinsky also sought leave to amend his complaint to add the further allegation that Fluor Daniel's director of human resources had arranged for an attorney who provided legal services to Fluor Daniel to represent at a reduced rate someone that Veprinsky was suing in an unrelated state court action.

The district court found all but one of these acts of retaliation to be outside the scope of Title VII's coverage. Relying principally upon our opinion in *Reed v. Shepard,* and a Fourth Circuit opinion citing *Reed, Polsby v. Chase,* 970 F.2d 1360, 1364–67 (4th Cir.1992), *vacated and remanded sub nom. Polsby v. Shalala,* 507 U.S. 1048, 113 S.Ct. 1940, 123 L.Ed.2d 646 (1993), the district court reasoned from the premise that Title VII's anti-retaliation provision did not extend to adverse actions taken against *former* employees. Thus, Veprinsky had no cause of action for retaliation based upon the alleged post-termination provision of inaccurate information to his new employer or the disclosure of the EEOC charge to Veprinsky's placement firm. The court therefore granted summary judgment in favor of Fluor Daniel on these claims. May 4, 1994 Mem. Op. at 12, 1994 WL 174136, at *5. It likewise denied Veprinsky leave to amend his complaint to add the charge that Fluor Daniel had procured an attorney for his opponent in the state court action, as this too post-dated Veprinsky's discharge. R. 33, Dec. 2, 1993 Minute Order.

Retaliation could be alleged for Fluor Daniel's refusal to rehire Veprinsky, the district court reasoned, because in that setting Veprinsky was an "applicant for employment" and thus within the express coverage of the statute. Mem. Op. at 12, 1994 WL 174136, at *5. Pollak & Skan, a firm specializing in placing temporary technical personnel, had submitted Veprinsky's resume to Fluor Daniel for the position of design engineer, along with the resumes of two other persons. None of the three was offered an interview. Pollak & Skan's Rory Lent subsequently had a conversation with Garry Tackett of Fluor Daniel's recruiting subsidiary to find out why. Lent's notes from that conversation attribute the following remarks to Tackett:

> Said Willy Walls was not a designer, Webster not a designer—both did drafting only. Verpinsky [sic] a no—said he's suing Fluor because of religion when he was there last time.

Lent Dep. 20, 34 & Group Ex. 2. Tackett told an EEOC interviewer in 1992 that he had never discussed Veprinsky's EEOC charge

with anyone outside Fluor Daniel's human resources department and that he did not recall any conversation with Lent. Later, however, Tackett acknowledged that he had mentioned the EEOC charge to Lent, but denied that he had identified it as a reason for the decision not to interview Veprinsky. The real reason he had rejected Veprinsky as a candidate, Tackett maintained, was that his resume did not reveal a familiarity with AutoCAD, a software design package used to create computerized drawings, and the company had deemed such familiarity a job requirement. Tackett insisted that he had conveyed Veprinsky's lack of qualification to Lent as the reason for the rejection; the EEOC charge was mentioned only as an afterthought.

The district court found the company entitled to summary judgment on this claim because Veprinsky had failed to rebut the evidence that Fluor Daniel had turned him down for a legitimate reason, namely his apparent lack of familiarity with AutoCAD. An employment requisition form that Fluor Daniel had submitted to Pollak & Skan confirmed that the company was indeed seeking someone with AutoCAD experience. Veprinsky averred that he in fact was familiar with AutoCAD, although he had not so indicated on his resume. Veprinsky also pointed out that the resume of the candidate who ultimately was offered the job, John Tassie, merely indicated that Tassie had purchased a computer in order to acquire a working knowledge of AutoCAD, not that Tassie was proficient in computer-aided design. Still, the district court was convinced that Fluor Daniel could have legitimately rejected anyone, including Veprinsky, whose resume (in contrast to Tassie's) did not affirmatively indicate at least some familiarity with AutoCAD. Veprinsky's failure to rebut that proposition left the record void of any evidence from which one could infer that his EEOC charge had been the reason for Fluor Daniel's decision not to re-hire him. Mem. Op. at 12–14, 1994 WL 174136, at *5–*6.

From these adverse rulings as to his claims of retaliation, Veprinsky has appealed.

## II.

The relevant provision of Title VII, section 704(a), provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). With "magnificent circularity" (*Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir.1986) (per curiam)), Title VII defines "employee" as "an individual employed by an employer." § 2000e(f). Because neither section 704(a) nor the definition of "employee" expressly includes former employees, a literal reading of the statute would exclude them from coverage for acts of retaliation.

However, the majority of circuits have concluded that former employees are protected from acts of retaliation, under Title VII as well as the parallel provisions of the Age Discrimination in Employment Act, 29 U.S.C. § 623(d),[1] and the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3).[2] *See Berry v. Stevin-*

---

1. In relevant part, the ADEA provides:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d). With exceptions that are immaterial here, the term "employee" is defined as "an individual employed by any employer,"

§ 630(f), just as it is in Title VII. The anti-retaliation provision of the ADEA has been recognized as "parallel to the anti-retaliation provision of Title VII ..., and cases interpreting the latter provision are frequently relied upon in interpreting the former." *Passer v. American Chem. Soc'y*, 935 F.2d 322, 330 (D.C.Cir.1991).

2. The FLSA, enacted in 1938, makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has

son Chevrolet, 74 F.3d 980, 985 (10th Cir. 1996) (Title VII) (reaffirming Rutherford v. American Bank of Commerce, 565 F.2d 1162, 1165–66 (10th Cir.1977) (Title VII)); Nelson v. Upsala College, 51 F.3d 383, 386–89 (3d Cir.1995) (Title VII); Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 200 (3d Cir.) (Title VII), cert. denied, —— U.S. ——, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994); EEOC v. J.M. Huber Corp., 927 F.2d 1322, 1331 & n. 41 (5th Cir.1991) (Title VII) (following EEOC v. Cosmair, Inc., L'Oreal Hair Care Div., 821 F.2d 1085, 1088–89 (5th Cir.1987) (ADEA)); Sherman v. Burke Contracting, Inc., 891 F.2d 1527, 1531–32 (11th Cir.1990) (per curiam) (Title VII) (reaffirming Bailey v. USX Corp., 850 F.2d 1506, 1509–10 (11th Cir.1988) (Title VII)), cert. denied, 498 U.S. 943, 111 S.Ct. 353, 112 L.Ed.2d 317 (1990), and overruled in part on other grounds by McGinnis v. Ingram Equip. Co., 918 F.2d 1491 (11th Cir.1990) (en banc); O'Brien v. Sky Chefs, Inc., 670 F.2d 864, 869 (9th Cir.1982) (Title VII), overruled in part on other grounds by Atonio v. Wards Cove Packing Co., 810 F.2d 1477, 1481–82 (9th Cir.1987) (en banc); Pantchenko v. C.B. Dolge Co., 581 F.2d 1052, 1054–55 (2d Cir.1978) (per curiam) (Title VII); Czarnowski v. Desoto, Inc., 518 F.Supp. 1252, 1257 (N.D.Ill.1981) (Flaum, J.) (Title VII); Bahu v. Fuller O'Brien Paints, 41 Fair Empl. Prac. Cas. (BNA) 1231, 1237, 1986 WL 12048, at *6 (N.D.Ind. July 25, 1986) (Miller, J.) (Title VII); Bilka v. Pepe's, Inc., 601 F.Supp. 1254, 1259 (N.D.Ill.1985) (Aspen, J.) (Title VII); EEOC v. Levi Strauss & Co., 515 F.Supp. 640, 642–43 (N.D.Ill.1981) (Moran, J.) (Title VII); see also Passer v. American Chem. Soc'y, 935 F.2d 322, 330–31 (D.C.Cir.1991) (ADEA); Dunlop v. Carriage Carpet Co., 548 F.2d 139, 142–47 (6th Cir.1977) (FLSA); Hodgson v. Charles Martin Inspectors of Petroleum, Inc., 459 F.2d 303, 306 (5th Cir.1972) (FLSA); cf. EEOC v. Ohio Edison Co., 7 F.3d 541, 544–46 (6th Cir.1993) (relying on this line of cases to hold that third parties who have not themselves engaged in protected activity may sue for retaliation under Title VII); Connell v. Bank of Boston, 924 F.2d 1169, 1179 (1st Cir.) (employee "about to be terminated" remains protected from retaliation under Title VII), cert. denied, 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991); Connecticut Light & Power Co. v. Secretary of U.S. Dep't of Labor, 85 F.3d 89, 93–94 (2d Cir. 1996) (upholding as permissible Secretary of Labor's determination that former employees qualify as employees within protection of anti-retaliation provision of Energy Reorganization Act of 1974, 42 U.S.C. § 5851(a)). "To read the statute otherwise," the District of Columbia Circuit reasoned, "would be to deny protection to any person who has suffered discharge or termination due to unlawful discrimination." Passer, 935 F.2d at 331 (interpreting the ADEA). Excluding former employees from the protection of anti-retaliation provisions cannot be justified based on the notion that such employees do not require it, the Third Circuit pointed out:

> The need for protection against retaliation does not disappear when the employment relationship ends. Indeed, post-employment blacklisting is sometimes more damaging than on-the-job discrimination because an employee subject to discrimination on the job will often continue to receive a paycheck while a former employee subject to retaliation may be prevented from obtaining any work in the trade or occupation previously pursued.

Charlton, 25 F.3d at 200. Thus, concerned that a narrow interpretation of the anti-retaliation provision of Title VII and its counterparts would leave a significant gap in the statutory protection that Congress intended, the majority of courts have eschewed a construction that effectively would, for example, "allow an employer to discriminate against and 'black list' a former employee as long as the employer can successfully keep the former employee from getting a job and thereby becoming technically 'employed by an employer.'" Dunlop, 548 F.2d at 147. "This would be to reward the very conduct the Act sought to preclude." Id.

---

testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]" 29 U.S.C. § 215(a)(3). The term "employee" is defined in exactly the same way it is for purposes of Title VII and the ADEA—"any individual employed by an employer." § 203(e)(1).

We are thought to have struck out in a different direction in *Reed v. Shepard, supra. See, e.g., Koelsch,* 46 F.3d at 709; *Robinson v. Shell Oil Co.,* 70 F.3d 325, 331 & n. 2 (4th Cir.1995) (en banc), *cert. granted,* —— U.S. ——, 116 S.Ct. 1541, 134 L.Ed.2d 645 (1996); 2 Lex K. Larson, EMPLOYMENT DISCRIMINATION § 34.01[1] at 34–8—34–9 & nn.5–6 (2d ed.1995). In *Reed,* a former employee of the Vanderburgh County, Indiana Sheriff's Department claimed that she was fired after challenging the purportedly discriminatory practices of the Department. She later filed suit under Title VII alleging, among other things, that she had been sexually harassed while in the Department's employ. She also alleged that she had been subjected to several acts of retaliation after her discharge. These included a physical assault by an assailant who urged her to drop the suit, late-night telephone calls threatening reprisals, and gunshots fired upon her car.

We concluded that Reed had no claim for retaliation under Title VII, emphasizing that a prima facie case of retaliation typically requires proof of an adverse *employment* action. 939 F.2d at 492–93. "Under section 2000e–3(a)," we explained, "it is an employee's discharge or other employment impairment *that evidences actionable retaliation, and not* events subsequent to and unrelated to his employment." 939 F.2d at 493 (emphasis in original). Thus, any relief for the acts of which Reed complained lay not in a Title VII action but, perhaps, in a state suit for damages or a criminal proceeding. *Id.*

The limited extent of our holding in *Reed* is a point we shall discuss at greater length below. For the present it is sufficient to emphasize that we did not purport to deem *all* post-termination acts of retaliation beyond the reach of section 704(a). We found only that the statute did not reach those retaliatory acts that are "subsequent to *and* unrelated to [the plaintiff's] employment." 939 F.2d at 493 (emphasis supplied).

Several years after *Reed,* we were again confronted with a claim of post-discharge retaliation. In *Koelsch v. Beltone Elec. Corp.,* 46 F.3d 705, Koelsch claimed that the individual who had allegedly harassed her during her employment at Beltone later made inappropriate remarks to someone who worked for a company with whom she was seeking employment, RTC. We pointed out that this claim was doomed by the fact that the alleged remarks had no impact on Koelsch's job search: by the time the remarks were allegedly made, Koelsch had been offered a job by RTC, among other firms, and in fact she had already accepted a position with another employer. *Id.* at 709. Still, citing *Reed,* we remarked, "The law in this circuit is quite clear … that post-termination events are not actionable under § 2000e–3(a)." *Id.* This observation, which attributes an extremely broad sweep to *Reed* (one we do not think justified by *Reed*'s qualified language), was unnecessary to our holding in *Koelsch,* and we consider it to be dictum that does not bind us here.

Meanwhile, the Fourth Circuit followed what it believed to be our lead in *Reed* and concluded that section 704(a) did not cover a post-termination act of retaliation. *Polsby v. Chase, supra,* 970 F.2d at 1365–67. It reasoned that the plain language of the retaliation provision did not apply to former employees. *Id.* at 1365, 1367.

> The statute specifically indicates that it is unlawful for an employer to retaliate against an employee or applicant for employment. No mention is made of former employees. Given that Congress considered it necessary to add "applicant for employment" as a person distinct from an "employee" to be protected from retaliation, Congress could certainly have also included a former employee if it had desired.

*Id.* at 1365. The court also noted that because Title VII as it stood at that time afforded only equitable remedies, relief for post-termination retaliation was, as a practical matter, unavailable in most instances. *Id.* at 1366–67. "While relief must be in the form of making the former employee whole as if the retaliation had not occurred, the equitable means to accomplish this goal are lacking. Such relief would entail calculating future damages and is far too speculative." *Id.* at 1366 (footnote omitted). *See also Sherman,* 891 F.2d at 1536–42 (Tjoflat, J., concurring) (criticizing 11th Circuit's creation

of a legal remedy for post-termination retaliation).[3]

The subsequent history of the Fourth Circuit's decision in *Polsby* requires us to point out that the court had reached this issue sua sponte, as it had not been briefed or argued by the parties. *See Robinson v. Shell Oil Co.*, 66 Fair Empl. Prac. Cas. (BNA) 1284, 1284–85 n. 2, 1995 WL 25831, at *9 n. 2 (4th Cir. Jan. 18, 1995) (vacated), *on reh'g*, 70 F.3d 325 (1995) (en banc). Polsby subsequently petitioned the Supreme Court to grant a writ of certiorari, and the Acting Solicitor General filed a brief urging the Court not to consider whether former employees were protected under section 704 because the Fourth Circuit's construction of Title VII merely constituted "an alternative ground for decision unnecessary to the result and does not rest on an adversary presentation of the question." *See Charlton*, 25 F.3d at 199–200 n. 5 (quoting Brief for the Respondent in Polsby at 9); Patricia A. Moore, Note, *Parting is Such Sweet Sorrow: The Application of Title VII to Post–Employment Retaliation*, 62 FORDHAM L. REV. 205, 205-06 n.4 (1993). The Court granted Polsby's petition, summarily vacated the judgment, and remanded to the Fourth Circuit "for further consideration in light of the position asserted by the Acting Solicitor General in his brief for the United States...." *Polsby v. Shalala*, 507 U.S. 1048, 113 S.Ct. 1940, 123 L.Ed.2d 646 (1993). The Fourth Circuit in turn sent the matter back to the district court, where the plaintiff's post-employment retaliation claims were briefly revived and then dismissed in view of the en banc decision in *Robinson*. *See Polsby v. Shalala*, 70 Fair Empl.Prac.Cas. (BNA) 800, 925 F.Supp. 379, 381–82 (D.Md. 1996).

In *Robinson*, the full Fourth Circuit had the opportunity to revisit this issue. 70 F.3d 325. Initially, a divided panel of that court held that former employees do enjoy protection from retaliation, 66 Fair Empl. Prac.

Cas. 1284, 1995 WL 25831, but the full court elected to rehear the case. Over the dissent of four members, the court agreed with *Reed* (more accurately, its interpretation of *Reed)* that the protections of section 704(a) do not extend to former employees. Looking first to the language of Title VII, the court found in neither section 704(a) nor in the statutory definition of the term "employee" any express reference to former employees. *Id.* at 329–30. The majority rejected the plaintiff's argument that the term "employees" as used in the anti-retaliation provision could be read to mean both current and former employees.

> Title VII defines "employee" for purposes of all provisions of Title VII; thus, that definition controls the meaning of "employee" wherever it appears throughout the statute. Because Title VII *does not* define "employee" as an individual *no longer employed* by an employer, then, under the rules of statutory construction, that meaning is excluded as a meaning from the term "employee." We are simply prohibited from reading into the clear language of the definition of "employee" that which Congress did not include. If Congress intended Title VII to remedy discrimination beyond the employment relationship, then it could have easily done so by including "former employee" when defining the term "employee."

*Id.* at 330 (emphasis in original) (citations omitted). In the court's view, the statute did not define "employee" in an ambiguous manner, nor, on its face, did the statute indicate that Congress intended a result different from that produced by a literal construction of the statutory language; thus, any resort to the legislative history was foreclosed. *Id.* "Congress' inclusion of 'applicants for employment' as persons *distinct* from 'employees,' coupled with its failure to likewise include 'former employees,' is strong evidence of Congressional intent that the term 'em-

---

**3.** The Civil Rights Act of 1991 permits a Title VII plaintiff to recover compensatory and punitive damages, obviating this consideration. *See* 42 U.S.C. § 1981a(a)(1). We note, however, that all but one of the retaliatory acts of which Veprinsky complains took place prior to November 21, 1991, the effective date of the 1991 Act. Consequently, the provisions of that Act do not apply to

these claims. *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Mojica v. Gannett Co.*, 7 F.3d 552 (7th Cir.1993) (en banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 1643, 128 L.Ed.2d 363 (1994). The relief to which Veprinsky may otherwise be entitled under Title VII is a matter for the district court to take up on remand. *See* n.8, *infra*.

ployees' in Title VII's anti-retaliation provision does not include former employees." *Id.* (emphasis in original). Two additional considerations persuaded the court that the exclusion of former employees was correct. First, the types of practices prohibited by Title VII reveal a focus upon employment, not post-employment relationships. *Id.* at 330–31. Second, a prima facie case of retaliation is typically said to require an "adverse *employment* action," a requirement that "necessarily entails conduct that occurs during the employment relationship." *Id.* at 331. The court cited *Reed* as exemplary of this requirement. *See Reed,* 939 F.2d at 492–93. Finally, the court acknowledged that its holding is at odds with the majority of circuits that have considered the question. 70 F.3d at 331 & nn. 2–3. In the Fourth Circuit's view, however, the rationale of these courts rested on "broad considerations of policy" and ran contrary to well-settled rules of statutory interpretation. *Id.* at 332. The Supreme Court recently granted certiorari in *Robinson. See* — U.S. —, 116 S.Ct. 1541, 134 L.Ed.2d 645 (1996).

■ The EEOC, which has filed a brief as a friend of the court, now asks us to overrule *Reed.* The language of section 704(a), the EEOC asserts, "does not support limiting its scope to a prohibition only of adverse employment actions taken against current employees...." Brief of the EEOC as Amicus Curiae at 6. We agree with the EEOC's assertion, but we find it unnecessary to revisit *Reed* in order to recognize a cause of action for retaliation in this case. *Reed* contains an important qualification that has gone largely overlooked (although not by Veprinsky). We held that "it is an employee's discharge or other employment impairment that evidences actionable retaliation, and *not* events subsequent to *and unrelated to his employment.*" 939 F.2d at 493 (latter emphasis supplied). On its face, *Reed* thus excludes from the realm of actionable retaliation only those post-termination acts which are unrelated to the plaintiff's employment. *See Nelson,* 51 F.3d at 387; *Gantchar v. United Airlines, Inc.,* No. 93 C 1457, 1995 WL 137053, at *13 (N.D.Ill. March 28, 1995) (Hart, J.). Conduct that is related to the plaintiff's employment or his efforts to gain

new employment is not addressed by *Reed.* For the reasons that follow, we believe that post-termination acts of retaliation that have a nexus to employment are actionable under Title VII, as Veprinsky himself argues.

■ Familiar rules of statutory construction guide our analysis. As always, we begin with the plain language of the statute we are called upon to apply. *Time Warner Cable v. Doyle,* 66 F.3d 867, 876 (7th Cir. 1995), *cert. denied,* — U.S. —, 116 S.Ct. 974, 133 L.Ed.2d 894 (1996). When the meaning of a provision is made clear by the words of the statute, we need not scrounge about the legislative history looking for an alternate meaning. *United States v. Hayward,* 6 F.3d 1241, 1245 (7th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994). At the same time, we take care not to read individual provisions in isolation. We admonished in *Time Warner Cable* that the " 'true meaning of a single section of a statute ... however precise its language, cannot be ascertained if it be considered apart from related sections[.]' " 66 F.3d at 877 (quoting *Commissioner of Internal Revenue v. Engle,* 464 U.S. 206, 223, 104 S.Ct. 597, 607, 78 L.Ed.2d 420 (1984)). *See also K mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988). In the same way, strict construction of the statutory language is to be avoided when the result would be senseless or clearly at odds with the evident purpose of the statute. *Czerkies v. U.S. Dep't of Labor,* 73 F.3d 1435, 1442 (7th Cir.1996) (en banc) (collecting cases); *Newsom v. Friedman,* 76 F.3d 813, 819 (7th Cir.1996) (citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)); *Reich v. Great Lakes Indian Fish & Wildlife Com'n,* 4 F.3d 490, 493–94 (7th Cir.1993); *see also Commissioner of Internal Revenue v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965).

■ It has long been recognized that Title VII is a remedial statute with a broad sweep. *Pullman–Standard v. Swint,* 456 U.S. 273, 276, 102 S.Ct. 1781, 1784, 72 L.Ed.2d 66 (1982); *Franks v. Bowman Transp. Co.,* 424

U.S. 747, 763, 96 S.Ct. 1251, 1263, 47 L.Ed.2d 444 (1976); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417–18, 95 S.Ct. 2362, 2371–72, 45 L.Ed.2d 280 (1975); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44–45, 94 S.Ct. 1011, 1017–18, 39 L.Ed.2d 147 (1974); *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

> The objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees.

*Id.*, 401 U.S. at 429–31, 91 S.Ct. at 853.

> It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination. This is shown by the very fact that Congress took care to arm the courts with full equitable powers. For it is the historic purpose of equity to "secur[e] complete justice," *Brown v. Swann*, 10 Pet. 497, 503, 9 L.Ed. 508 (1836); see also *Porter v. Warner Holding Co.*, 328 U.S. 395, 397–98, 66 S.Ct. 1086, 1088–89, 90 L.Ed. 1332 (1946). "[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946).

*Albemarle Paper Co.*, 422 U.S. at 418, 95 S.Ct. at 2372.

We have thus construed Title VII liberally, in keeping with its remedial purpose. *Philbin v. General Elec. Capital Auto Lease, Inc.*, 929 F.2d 321, 323 (7th Cir.1991) (per curiam); *Doe on behalf of Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411, 422 (7th Cir.1986); *Unger v. Consolidated Foods Corp.*, 657 F.2d 909, 915, n. 8 (7th Cir.1981), *vacated on other grounds*, 456 U.S. 1002, 102 S.Ct. 2288, 73 L.Ed.2d 1297 (1982); *see also Hale v. Marsh*, 808 F.2d 616, 621 (7th Cir. 1986). In fact, we have specifically accorded the term "employee" a generous construction, noting that it was important to do so in order "to further the goals and purposes of eliminating discrimination in employment." *Unger*, 657 F.2d at 915 n. 8.

Section 704(a) of the statute serves a particular purpose that we must keep in mind as we interpret "employee" once again here. As the Supreme Court pointed out in *Alexander*, "Congress gave private individuals a significant role in the enforcement process of Title VII." 415 U.S. at 45, 94 S.Ct. at 1018.

> Individual grievants usually initiate the [EEOC's] investigatory and conciliatory procedures. And although the 1972 amendment to Title VII empowers the Commission to bring its own actions, the private right of action remains an essential means of obtaining judicial enforcement of Title VII. In such cases, the private litigant not only redresses his own injury but also vindicates the important congressional policy against discriminatory employment practices.

*Id.* at 45, 94 S.Ct. at 1018 (citations omitted). Given the instrumental role individual employees play in the statutory scheme, the protection of those individuals from retaliatory acts by the employer "is essential to accomplish the purpose of Title VII." *EEOC v. Pacific Press Pub. Ass'n*, 676 F.2d 1272, 1281 (9th Cir.1982); *accord EEOC v. Board of Governors of State Colleges & Univs.*, 957 F.2d 424, 431 (7th Cir.), *cert. denied*, 506 U.S. 906, 113 S.Ct. 299, 121 L.Ed.2d 223 (1992). *See also Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960) (commenting upon the anti-retaliation provision of the FLSA). The purpose of section 704(a) is therefore plain. "In unmistakable language it is to protect the employee who utilizes the tools provided by Congress to protect his rights." *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1005 (5th Cir.1969); *accord Cassidy v. Virginia Carolina Veneer Corp.*, 652 F.2d 380, 382 (4th Cir.1981); *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir.1978).

With the mission of section 704(a) in mind, we return to the statutory language. It is true that the anti-retaliation provision does not mention former employees as among those individuals entitled to claim its protection. The statute instead speaks of "employees" and "applicants for employment." The

use of the latter term, which extends the reach of the statute to individuals who have not yet attained the status of employees, can be read to suggest that had Congress wanted to include individuals who have lost or relinquished their status as employees, it would have used comparable language to accomplish that end. *Robinson*, 70 F.3d at 330.[4] But the exclusion of former employees from the protection of section 704(a), if that is indeed what Congress intended, gives us pause. It is hardly uncommon, after all, for unlawful discrimination to manifest or culminate in the discharge (actual or constructive) of an employee. A significant percentage of EEOC charges and federal lawsuits are thus filed by former employees. Such individuals are by no means beyond the reach of employers who wish to stifle their complaints. The ability to "blacklist" a former employee, and thus foreclose future employment possibilities, is but one example of an employer's power to punish a former employee for the exercise of her Title VII rights. *See Charlton*, 25 F.3d at 200; *Dunlop*, 548 F.2d at 147; *Hodgson*, 459 F.2d at 306. A narrow construction of the term "employee" would therefore permit the employer to penalize a complaining former employee with impunity yet bar the employer from taking adverse action against any current employee who has filed a charge, even if the complaints address the same type of discrimination. *See Robinson*, 70 F.3d at 332–33 (Hall, J., dissenting). Nothing in the purpose, design, or the legislative history of Title VII suggests that Congress would approve of such an anomalous disparity, particularly when the discharge itself may be the discriminatory act that has prompted the former employee to exercise her statutory rights. As the Tenth Circuit observed in *Rutherford*, "[t]here is no ground for affording any less protection [against re-

taliation] to defendant's former employees than to its present employees." 565 F.2d at 1166 (quoted with approval in *J.M. Huber*, 927 F.2d at 1331).

Ultimately, however, we need not resort to arguments based on policy and legislative purpose to bring former employees complaining of employment-related retaliation within the scope of section 704(a), for we find in the statute additional language that logically compels their inclusion. The statute makes it illegal for an employer to retaliate against any employee who has "opposed *any practice* made an unlawful employment practice by this subchapter, or because he has made *a charge*, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." (Emphasis supplied.) Discharging an employee on the basis of his race, sex, religion, or national origin is obviously one of the practices made unlawful by Title VII, and use of the term "any practice made an unlawful employment practice by this subchapter" clearly envisions that protesting such discharges is a protected activity. Yet, the individuals most likely to oppose unlawful discharges, and to file charges seeking relief, are the discharged employees themselves. Curiously, then, construction of the statute so as to exclude former employees from coverage would undermine a provision that otherwise appears to protect all manner of protesting unlawful employment practices.[5] Indeed, on its face, such a construction is very much at odds with the expressed intent that opposition against *any* unlawful practice be protected. It is therefore an interpretation that we find untenable. As the Third Circuit observed so succinctly in *Charlton*, surely "Congress did not intend Title VII's protection against retaliation to end with termination of employ-

---

4. On the other hand, "[a]n applicant for employment, unlike a former employee, may not be described as an 'employee,'" *Pantchenko*, 581 F.2d at 1055—a former employee has, for a period of time, enjoyed some type of formal and mutually recognized relationship with the employer. Consequently, although the necessity of writing "applicants for employment" into a statute that otherwise protects only "employees" is clear, the need to expressly add "former employees" to the list of protected persons is less obvious. "[O]nce an employment relationship has

been created, use of the term 'employee' in referring to a former employee, while colloquial, is not inappropriate." *Id.; see also Robinson*, 70 F.3d at 335 (Murnaghan, J., dissenting).

5. That construction would, for example, protect a current employee who protests the unlawful discharge of a co-worker, but would leave the discharged worker herself unprotected. *See Hale*, 808 F.2d at 619; *see also Robinson*, 70 F.3d at 332–33 (Hall, J., dissenting).

ment when it is the termination itself that gives rise to the protected act of filing a Title VII action." 25 F.3d at 200; *see also Passer,* 935 F.2d at 331 ("Obviously, Congress could not have intended such an absurd result."). If Congress had intended to remove former employees from the protected class of workers protesting "any" type of unlawful employment practice, one would expect it to have done so expressly.[6]

We therefore conclude that former employees, in so far as they are complaining of retaliation that impinges on their future employment prospects or otherwise has a nexus to employment, do have the right to sue their former employers under section 704(a). This holding is true to Congress' goal of "achiev[ing] equality of employment opportunities." *Griggs,* 401 U.S. at 429–30, 91 S.Ct. at 853; *see Nelson,* 51 F.3d at 387. It complements the scheme of Title VII, which relies largely on employees themselves, including discharged employees, to enforce the dictates of the statute. *See Alexander,* 415 U.S. at 45, 94 S.Ct. at 1018; *see also Mitchell,* 361 U.S. at 292, 80 S.Ct. at 335. It is in harmony with the many decisions from other courts that have recognized the importance of assuring that discharged employees remain protected from retaliation when they assert their statutory rights, particularly when it is the discharge itself that is challenged. *Charlton,* 25 F.3d at 200. Finally, it is consistent with our observation in *Reed* that a claim for retaliation under section 704(a) requires the employee to establish an "employment impairment that evidences actionable retaliation." *939* F.2d at 493. *See Nelson,* 51 F.3d at 387; Moore, 62 Fordham L. Rev. at 220–22.

Our holding today does not require us to overrule *Reed. Reed,* as we have now pointed out several times, does not state that *all* post-termination manifestations of retaliation lack a remedy under Title VII. The allegations before the court in *Reed* involved acts that had nothing to do with employment, and we took care to so note in explaining why the allegations were not cognizable. 939 F.2d at 493. A holding that section 704(a) reaches *no* post-termination act of retaliation would have required us to address a long line of authority to the contrary. *See supra* at 884–86. Indeed, given that we would have been the first circuit to so hold, and we would have thus brought ourselves into conflict with every other circuit that had then considered the question, Circuit Rule 40(f) (now Rule 40(e)) would have required circulation of the panel's opinion to the full court prior to release. The opinion was not so circulated, suggesting that we perceived no conflict between *Reed* and the opinions of our sister circuits. Indeed, we cited none of the many cases on this more fundamental issue. All of this counsels in favor of construing *Reed* to mean what it says, rather than attributing to *Reed* a repudiation of existing authority both silent and sweeping. *Reed* holds inactionable the claims of former employees only when they are unrelated to the plaintiff's employment. So understood, *Reed* poses no bar to our holding here, and we leave *Reed* undisturbed.

■ We acknowledge the EEOC's argument that, where former employees are concerned, nothing in the language of Title VII supports a holding limiting the reach of section 704(a) to retaliatory acts that affect his or her prospects for future employment or otherwise constitute an "adverse *employ-*

---

**6.** The dissent suggests that Congress might have decided to exclude former employees from the coverage of section 704(a) so as not to create a cause of action "unlimited in time." *Post* at 897. Otherwise, "[a] cause of action could be brought one, five, or even twenty years after the job ended," the dissent points out. *Post* at 897. Yet, in order to establish a prima facie case of retaliation, a plaintiff must always offer proof of "a causal link between the protected expression and the adverse action." *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1457 (7th Cir.1994). If the plaintiff has evidence from which one may reasonably infer that her former employer waited in

the weeds for five or ten years and then retaliated against her for filing an EEOC charge, we see no difficulty with allowing the case to go forward. If, on the other hand, the plaintiff has no proof of a nexus between her protected activity and the employer's purported act of belated retaliation, we are confident that her case will be disposed of in short order. This key element of the prima facie case remains an adequate safeguard against meritless claims that significantly post-date the plaintiff's employment. *See O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996).

*ment* action." Compare section 704(a), which makes it an unlawful employment practice for an employer to "discriminate" against those who have engaged in protected activity (sec. 2000e–3(a)), with section 703(a)(1), for example, which makes it unlawful for an employer on the basis of race, color, religion, sex, or national origin "to fail or refuse to *hire* or to *discharge* any individual, or otherwise to discriminate against any individual with respect to his *compensation, terms, conditions* or *privileges of employment*" (sec. 2000e–2(a)(1)) (emphasis supplied). *See McDonnell v. Cisneros,* 84 F.3d 256, 258–59 (7th Cir.1996). A current employee can sue for retaliatory acts that, but for the fact that they are committed by his employer, are unrelated to employment as such. *See, e.g., Berger v. Iron Workers Reinforced Rodmen Local 201,* 843 F.2d 1395, 1424 (D.C.Cir.) (per curiam) (repeated threats amounting to harassment), *modified on reh'g in part on other grounds,* 852 F.2d 619 (1988) (per curiam), *and cert. denied,* 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1018 (1989); *see also Ford v. Alfaro,* 785 F.2d 835, 841 (9th Cir. 1986) (threats or acts of physical violence) (FLSA); *McLane/Western, Inc. v. NLRB,* 723 F.2d 1454, 1456–57 (10th Cir.1983) (threat, inter alia, to punch employee in the nose) (NLRA); *and see McDonnell,* 84 F.3d 256, 258–59. Other courts have recognized as viable post-termination retaliation claims based on conduct that is not per se related to employment. *See, e.g., Berry v. Stevinson Chevrolet, supra,* 74 F.3d at 986 (interpreting "adverse employment action" broadly to include employer's instigation of criminal theft and forgery charges against complaining former employee); *Beckham v. Grand Affair of North Carolina, Inc.,* 671 F.Supp. 415, 419–20 (W.D.N.C.1987) (former bartender who was arrested and prosecuted for criminal trespass after she visited bar as a customer stated viable claim for retaliation) (overruled implicitly by *Robinson*); *EEOC v. Levi Strauss & Co., supra,* 515 F.Supp. at 641 (retaliation prohibited by section 704(a) includes slander and defamation suit filed by supervisor against complaining former employee). Certainly a former employee can be harmed, and in particular can be intimidated, by acts that do not bear on her efforts to obtain another job. A threat of violence, to cite a dramatic example, may be every bit as effective in dissuading a former employee from pursuing a pending Title VII claim as blackballing her among other prospective employers. *See McDonnell,* 84 F.3d 256, 258–59. *Reed* nonetheless deems retaliation in this form beyond the scope of Title VII, although, as we pointed out in *Reed,* the employee may have a remedy in state court. 939 F.2d at 493; *see also Nelson,* 51 F.3d at 388 & n. 7; *but see* James Francis Barna, Comment, *Keeping the Boss at Bay—Post-Termination Retaliation under Title VII: Charlton v. Paramus Board of Education,* 47 WASH. U.J. URB. & CONTEMP. L. 259, 268 n.55 (1995) ("That suggestion constitutes mere speculation."). But we need not resolve in this case whether *Reed* was correctly decided. The answer does not make a difference to the outcome here, and any reexamination of *Reed* should await a case in which it does. All but one of the retaliatory acts of which Veprinsky complains do relate to his job prospects, and the one claim that does not is meritless on its face. The Supreme Court may well shed some light on this subject in *Robinson,* although like this case, *Robinson* concerns post-termination acts of retaliation that relate to future employment prospects.

◼ We turn to Veprinsky's retaliation claims. The district court reached the merits of only one of these claims-that based on Fluor Daniel's refusal to rehire Veprinsky. With respect to that claim, Veprinsky was an "applicant for employment" with an undisputed right to sue under section 704(a) regardless of whether former employees are covered by the statute. Mem. Op. at 12, 1994 WL 174136, at *5. The district court granted summary judgment in Fluor Daniel's favor on that claim because Veprinsky's resume did not indicate that he met one of the stated requirements for the job and the company would have been justified in refusing to hire anyone who submitted a comparable resume. Mem. at 12–14, 1994 WL 174136, at *5–*6. However, given the direct evidence that Veprinsky's pending EEOC claim may have been a motivating factor in Fluor Daniel's decision not to rehire him, we believe that this was an issue that could not be

resolved on summary judgment. The district court disposed of Veprinsky's three other retaliation claims believing that former employees could not sue for retaliation. Although our clarification of *Reed* revives two of these claims, the third fails on its merits.

Veprinsky's claim that Fluor Daniel refused to rehire him in retaliation for filing the EEOC charge must be resolved at trial. The evidence of a retaliatory motive in this case is direct, not circumstantial. A plausible reading of Rory Lent's notes is that Garry Tackett of Fluor Daniel indicated to Lent that Veprinsky was a "no" for the open position of design engineer because he was suing the company for religious discrimination. Lent Dep. 20, 34 & Group Ex. 2. Thus, one certainly may infer that Fluor Daniel took adverse, employment-related action against Veprinsky (it refused to re-hire him) at least in part because he had filed a Title VII charge against the company. *See Robinson v. PPG Indus., Inc.*, 23 F.3d 1159, 1164–66 & nn. 2–3 (7th Cir.1994). Indeed, proof that an improper motive played a role in the employer's decision is rarely stronger than this. In the face of this kind of direct evidence, Fluor Daniel must ultimately establish, by a preponderance of the evidence, that it would not have rehired Veprinsky even if a desire to retaliate in no way tainted its decisionmaking. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989) (plurality); *id.* at 265, 109 S.Ct. at 1798–99 (O'Connor, J., concurring); *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir.1989); *see also* 42 U.S.C. § 2000e–2(m).

As summarized above, the company sought to resolve this matter on summary judgment by demonstrating that the position for which Veprinsky applied required familiarity with AutoCAD design software, that Veprinsky's resume disclosed no such familiarity, and that the individual hired for the position, John Tassie, did have experience with AutoCAD. Based on the evidence of record, the district court was persuaded that the AutoCAD requirement was valid and not concocted by the defendant after the fact, and that a comparison of Tassie's resume with Veprinsky's would have indicated to Fluor Daniel that Tassie met the requirement but Veprinsky did not. Veprinsky thus could demonstrate no causal nexus between his pending EEOC charge and the company's decision not to rehire him; irrespective of any retaliatory motive the company may have harbored, Flour Daniel was justified in not hiring him. Mem. Op. at 12–14, 1994 WL 174136, at *5–*6.

■ As we view the record, however, Fluor Daniel succeeded only in placing into dispute what role (if any) the retaliatory motive suggested by Tackett's remark to Lent had upon its decision to reject Veprinsky for the open position. We have stated that motions for summary judgment in discrimination cases must be decided with particular care, given the extent to which the merits often turn on questions of credibility and intent. *E.g., Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir.1995); *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir.1995). Also, as in any other case, the non-movant is entitled to the benefit of every reasonable inference that the record permits. *E.g., Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 72 (7th Cir.1996); *Stratmeyer v. United States*, 67 F.3d 1340, 1345 (7th Cir.1995). When the plaintiff has produced direct evidence supporting a strong inference that the employer retaliated, a court must take particular care in evaluating the employer's evidence that it would have made the same decision absent that retaliatory motive. As the Eleventh Circuit has noted:

> At the summary judgment stage, an employer can prevail on this issue only if the record evidence that its employment decision was not based on discrimination is so strong that a reasonable trier of fact must so conclude; in other words, there must be no genuine issue of material fact but that the employer would have made the same employment decision even absent the discriminatory motive.

*Burns v. Gadsden State Community College*, 908 F.2d 1512, 1519 (11th Cir.1990) (per curiam) (quoted with approval in *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 662 (7th Cir.1991) (en banc) (Flaum, J., dissenting)); *see also id.* at 660 (majority opinion). We agree that one may infer from Fluor

Daniel's evidence that Veprinsky would have been rejected even if Fluor Daniel had harbored no motive to retaliate. But the company's evidence is not so strong that no rational factfinder could draw the contrary inference that a retaliatory motive played a substantial role in the decision. *See* 42 U.S.C. § 2000e–2(m). Although it is undisputed that Auto-CAD was a stated requisite for the position that Veprinsky sought, there is no evidence that it was ironclad. Employers typically identify a variety of requirements for any one position which vary in importance and flexibility. We cannot be certain from the record as it stands that Fluor Daniel would in fact have refused any candidate whose application did not reveal proficiency with AutoCAD. It is not clear from Tassie's resume, for example, whether he had done anything more than begin an attempt to acquire familiarity with the software. Nor is there any evidence in the record indicating that Fluor Daniel rejected other applicants who were otherwise qualified for the position because their resumes did not speak to their familiarity with AutoCAD. So it may be the case that this was something other than a dispositive prerequisite. In view of the other evidence suggesting that Veprinsky's pending EEOC charge contributed to Fluor Daniel's decision not to interview him, whether the company inevitably would have rejected Veprinsky on lawful grounds was not a question that could not be answered on summary judgment. It is for the factfinder to determine whether a desire to retaliate played a significant role in the company's decision not to rehire Veprinsky for the design position. In this respect, then, we must reverse the grant of summary judgment in Fluor Daniel's favor.

■ We must also reverse the grant of summary judgment on Veprinsky's claim that Fluor Daniel retaliated against him by disclosing his pending EEOC charge to Pollak & Skan. Veprinsky asserts that once the placement firm was apprised of the charge, it no longer submitted his resume to employers with open positions. *See Rutherford v.*

*American Bank of Commerce, supra,* 565 F.2d at 1164–65. The sole basis on which the district court disposed of this claim was *Reed;* and no other ground for summary judgment has been argued to us. Having made clear that *Reed* poses no obstacle to retaliation claims founded on post-termination events that relate to employment, as this one does, we must return this claim to the district court for further proceedings as well.[7]

Veprinsky also alleged that Fluor Daniel provided false information to a subsequent employer. Shortly after Sargent & Lundy hired Veprinsky in 1991, it contacted Fluor Daniel to confirm certain facts regarding his employment history. According to Veprinsky, Fluor Daniel's human resources department, which had reported accurate data concerning his employment before he filed an EEOC charge, provided false information to Sargent & Lundy. This information purportedly included the date on which Fluor Daniel hired Veprinsky, his position, and his salary. Veprinsky alleges that the employee who provided this information on behalf of Fluor Daniel did so knowing that the information was false and that by contradicting the data Veprinsky himself had provided to Sargent & Lundy, she might be damaging Veprinsky's relationship with his new employer. Veprinsky's allegations might support a claim of retaliation under section 704(a). There is an unresolved question as to the extent of the inaccuracies in the information Fluor Daniel provided; the actual discrepancies may not be material. There is also some doubt as to whether the purported inaccuracies resulted in any harm to Veprinsky. His complaint, for example, alleges only that the inaccuracies "jeopardized" his relationship with Sargent & Lundy. Moreover, as Fluor Daniel has pointed out on appeal, there is no evidence that Sargent & Lundy disciplined Veprinsky, reduced his pay, fired or demoted him, or that his prospects with his new employer suffered in any way. Absent evidence that Fluor Daniel's actions resulted in some type of concrete

---

7. We note that Fluor Daniel has left this claim largely unaddressed on appeal. Veprinsky's first amended complaint does lump this claim together with the claim that the company refused to consider him for the new design position. However, the district court treated these as distinct claims (Mem. Op. at 4, 12, 1994 WL 174136, at *2, *5), as do we.

injury to Veprinsky, this claim may ultimately fail. *See Koelsch,* 46 F.3d at 709, discussed *supra* at 886. But this was not argued to the district court as a basis for summary judgment; consequently Veprinsky was under no obligation to present such evidence. *Hartman v. Board of Trustees of Community College Dist. No. 508,* 4 F.3d 465, 469 (7th Cir.1993) (citing *Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1310 (7th Cir.1989)). *Reed* was the sole basis cited for the grant of summary judgment on this claim. Mem. Op. at 12, 1994 WL 174136, at *5. We must therefore reverse the judgment as to this claim and return it to the district court.[8]

■ Finally, Veprinsky sought leave to amend his complaint in order to add the claim that Fluor Daniel had arranged representation for Debra Henning, whom Veprinsky had named as a defendant in a state-court action, at a reduced rate of compensation normally reserved for high-volume clients. That attorney performed work for Fluor Daniel on a regular basis. Because this purported act of retaliation is entirely unrelated to employment, *Reed* would bar the claim even if it were otherwise meritorious. But we need not rest on *Reed,* because the allegations plainly lack merit. We recognize that, as a factual matter, an employer can retaliate against a former employee in a variety of ways, many of them subtle. *See Dole v. Local 1942, Int'l Brotherhood of Elec. Workers, AFL–CIO,* 870 F.2d 368, 372 (7th Cir.1989). But Veprinsky's allegations fall beyond the realm of cognizable retaliation. Barring some conflict of interest, Veprinsky had no right to determine whom his adversary engaged as counsel. Nor has Veprinsky pointed to any concrete harm that would support a finding that Flour Daniel took material, adverse action against him in procuring the attorney. It might be unusual for a company to help a former employee like Henning find an attorney (and arrange a

favorable retainer), but there is nothing inherently improper about it. Moreover, there is no allegation that the attorney did anything inappropriate at all, let alone that he did so at Fluor Daniel's behest. We can only assume, therefore, that the outcome of the state litigation turned on the facts and the law, not on who represented the person that Veprinsky sued. Perhaps the attorney was a powerhouse, perhaps Veprinsky's adversary would have lost the case in this attorney's absence. But this is simply not the kind of harm courts are equipped to recognize. Any possible adversity that Veprinsky may have suffered as the result of Fluor Daniel's intervention is too intangible to constitute the kind of retaliatory "discrimination" that section 704(a) prohibits.

## III.

Title VII entitles Veprinsky to sue for alleged acts of retaliation related to employment despite the fact that these acts followed his discharge from Fluor Daniel's employ. For this reason and the others we have given, Fluor Daniel was not entitled to summary judgment on claims that it refused to interview (and hire) Veprinsky for another position because he had charged the company with employment discrimination, that the company disclosed the fact of his pending EEOC charge to Veprinsky's placement firm, and that the company provided false information about his employment history to a subsequent employer. However, the district court properly denied Veprinsky leave to amend his complaint in order to assert an additional claim of retaliation. The proposed claim, as we have explained, lacks any merit. The parties shall bear their own costs on appeal.

We thank the EEOC for its helpful brief.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

8. There is some question as to what remedies might be available to Veprinsky under the version of Title VII applicable to his surviving retaliation claims, should he ultimately prevail on one or more of them. Injunctive relief might appropriately address the dissemination of any inaccurate information regarding his employment with Fluor Daniel and the disclosure to placement firms and prospective employers that Veprinsky filed an EEOC charge and this lawsuit. But this is, as we have noted, a matter for the district court to address on remand. *See* n.3, *supra.* The nature of the relief that Title VII might afford Veprinsky is not an issue that the parties have addressed on appeal other than in passing, and we cannot say with confidence that no useful remedy could be fashioned for the types of retaliation that Veprinsky has alleged.

MANION, *Circuit Judge,* concurring in part and dissenting in part.

Title VII[1] defines "employee" as "an individual employed by an employer." The counterpart to this obvious definition presumably would be that a "former employee" means an individual formerly employed or no longer employed by an employer. This court correctly notes that "because neither section 704(a) nor the definition of 'employee' expressly includes former employees, a literal reading of the statute would exclude them from coverage for acts of retaliation." *Ante* at 884. A number of courts have apparently treated this "gap" as an oversight by Congress rather than an intentional omission. Thus those courts, and now this court, have decided to fill in the statutory language Congress supposedly left out. This court now supplements the statute by holding that "post-termination acts of retaliation that have a nexus to employment are actionable under Title VII." Because they are not actionable under Title VII as Congress drafted it, I must respectfully dissent.

## I.

Fluor Daniel claims it terminated Yuri Veprinsky because it lacked the work necessary to keep him employed. Veprinsky found work with Sargent & Lundy. Sargent & Lundy contacted Fluor Daniel to verify Veprinsky's pay and start dates. Using information contained on Fluor Daniel's computer system, a Fluor Daniel's employee informed Sargent & Lundy that Veprinsky's base salary was $4,635 per month (and not the $4,800 per month Veprinsky had listed on his application) and that his start date was February 1990 (the date when Veprinsky became a full-time employee—not 1986 when Veprinsky was first listed on Fluor Daniel's payroll as an unpaid employee.) Veprinsky claims that Fluor Daniel provided Sargent & Lundy with false information in retaliation for a Title VII claim Veprinsky had filed against Fluor Daniel.[2] Veprinsky sued Fluor Daniel for, among other things, this alleged

retaliation under section 704(a) of Title VII, which provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

A number of courts have held that "employee" for purposes of section 704(a) also means "former employees" (at least where the alleged retaliation is job related). However, the Fourth Circuit in its *en banc* decision in *Robinson v. Shell Oil Co.,* 70 F.3d 325 (4th Cir.1995), *cert. granted* —— U.S. ——, 116 S.Ct. 1541, 134 L.Ed.2d 645 (1996), held that the plain language of section 704(a) does not extend its protection to former employees. The Supreme Court has granted certiorari to *Robinson* to resolve the split in the circuits. Until the Supreme Court instructs otherwise, I prefer to follow the Fourth Circuit's reasoning in *Robinson.*

Two divergent views of the judiciary's role cause this circuit split. Many courts (and now this court) which have held that "employee" also means "former employee" reach this holding " 'to further the goals and purposes of eliminating discrimination in employment.' " *Ante* at 889 (quoting *Unger,* 657 F.2d at 915 n. 8). These are certainly lofty goals, but the question remains whether it is the job of Congress or the courts to establish the written legal standards necessary to achieve these goals. The courts also rely on the remedial nature of Title VII to liberally construe the word "employee" to also mean "former employee." *Ante* at 889. But where a word must be modified to allow for a certain interpretation, that word is no longer being construed; it is being changed. The use of the modifier "former" is telling; it is necessary to add the word "former" to the statute because the plain meaning of the word "employee," no matter how liberally construed, cannot encompass "former em-

---

1. 42 U.S.C. § 2000e *et seq.*

2. Veprinsky had his day in court under his original Title VII charge. After he voluntarily

dropped his religious discrimination claim, he had a full trial on his national origin claim—and he lost.

ployees." It is one thing to interpret statutory language "narrowly" or "broadly." It is quite another thing to rewrite a statute to include language Congress chose to exclude.

"Employee" is defined by statute as "an individual employed by an employer." 42 U.S.C. § 2000e(f). Neither the word "employee," nor its definition is ambiguous.

> The rules of statutory construction require us to give the words Congress used to define 'employee' their common usage. The term 'employed' as used in subsection 2000e(f) is commonly used to mean 'performing work under an employer-employee relationship.' Certainly, the term 'employed' is not commonly used to mean 'no longer performing work under an employer-employee relationship.' Furthermore, 'employer' as used in subsection 2000e(f) is commonly used to mean 'one who employs the services of others.' Again, no meaningful argument can be made that the term 'employer' is commonly used to mean 'one who no longer employers the services of others.'

*Robinson,* 70 F.3d at 330 (citations omitted).

"Because Title VII does not define 'employee' as an individual no longer employed by an employer, that meaning is excluded as a meaning from the term 'employee'." *Id.* "Additionally, Congress' inclusion of 'applicants for employment' as persons distinct from 'employees,' coupled with its failure to likewise include 'former employees,' is strong evidence of Congressional intent that the term 'employees' in Title VII's anti-retaliation provision does not include former employees." *Id.*

Other courts and now this court reason that a literal reading of Title VII "would leave a significant gap in the statutory protection ... [and] allow an employer to discriminate against and 'black list' a former employee as long as the employer can successfully keep the former employee from getting a job and thereby becoming technically 'employed by an employer.'" *Ante* at 885. Gap there may be, but that does not allow us to rewrite the statute to fill this or any other gap we discover. We cannot rewrite a statute merely because we find it deficient in accomplishing what we perceive as a legislative agenda, no matter how clear or important that agenda may be. From the sidelines courts can observe and comment upon the legislative process. And when we are given "pause" when that process excludes "former employees" from a statute, we nevertheless cannot insert such language in a statute as if we had a vote in Congress. We only interpret the law. In interpreting it we must "apply the law that Congress enacted," not the one we think it should have enacted. *Robinson,* 70 F.3d at 328. And that law simply does not protect "former employees" against retaliatory discrimination.

Moreover, contrary to statements by this and other courts that Congress just could not have intended to leave former employees unprotected, *ante* at 891–92, there are good reasons for their exclusion. Had Congress defined "employee" to include both those "employed" as well as those "formerly employed," it would have created a cause of action unlimited in time. A cause of action for retaliation could be brought one, five, or even twenty years after the job ended (since the cause of action would not accrue until the alleged retaliation occurred). Congress had to draw a line. It did so at the most logical point—the end of the employment relationship. In effect, section 704 works as a statute of repose. Just like a statute of repose, one day an individual has a claim and the next he does not. No more than a statute of repose, this is not "grossly absurd or a plainly unintended result." *See Robinson,* 70 F.3d at 332–33 (J. Hall, dissenting) (submitting that section 704(a) is grossly absurd because one day's difference will excuse an employer for equally culpable behavior).

It is also important to recognize in this so-called "retaliation" context that the litigant has already filed some sort of claim against the employer for an allegedly discriminatory act during employment. If that act was a violation by the employer, the "retaliation" provision protects the employee who was awarded reinstatement, a promotion, or some other remedy that includes a continuing employer-employee relationship. In that circumstance the employee could be vulnerable to subtle and not-so-subtle retribution from the employer he sued. The statute carefully

protects such a potentially vulnerable employee.

Here Veprinsky went to trial alleging national origin discrimination and lost. Now he alleges retaliation by his former employer for, among other things,[3] a clerk erroneously listing his pay at $4,635 per month instead of $4,800 as Veprinsky claims, and for listing his starting date as February 1990 (when he came on full time) instead of 1986 when he was part-time or unpaid. Not only are these incidents relatively minor, but they are just the type of claims Congress would very understandably want to avoid. Veprinsky could file the same claim five or twenty years later if a clerk, in response to a routine request from a new or prospective employer, sent the same presumably inaccurate information. Drawing the line at post-employment is not grossly absurd; rather it is a sensible balance of the interests of the employer and the employee.

Going another step, the language under 704(a) protects not only an employee who has filed a charge, it also applies to employees who "testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." Imagine if this protection extends to former employees. Someone who years earlier voluntarily left Company A for another job at Company B could be called upon to participate in an investigation of a claim by a former coworker still employed at Company A. That "participant" has no complaint against Company A about his own previous employment. Yet if that participant's present or prospective employer requests information from Company A that turns out to be inaccurate (as Veprinsky's apparently was), no matter how much time has passed since that participant's employment at Company A, as a *former* employee he has a cause of action under 704(a) as this court has rewritten it. Congress surely could have anticipated this magnified exposure when it limited protection to employees and applicants.

Additionally, Title VII was sweeping legislation which faced opposition in Congress. Its passage was not assured. Support is often swayed by the precise wording of a statute, which in the case of section 704(a) included only two classes of protected individuals—"employees and applicants for employment." Bargains struck by congressional sponsors may have excluded "former employees" from section 704(a) to gain congressional support. Because we cannot know the behind-the-scene bargains struck to ensure passage, we should apply the plain meaning of a statute. We certainly should not put ourselves behind the scenes to negotiate the law as we might prefer it.

Further, when it passed section 704(a) Congress could have believed it untenable to include "former employees" within its protection because the only relief available for retaliatory discrimination at that time was equitable, which would be difficult to provide "former employees." Congress amended Title VII in 1991 to allow for compensatory and punitive damages, so this is no longer a concern. But when Congress wrote the word "employee" and defined that term in a way that did not include "former employees," it had a legitimate reason for limiting protection to "employees and applicants for employment." Or Congress could have believed it more efficient to hold a prospective employer liable for retaliating against an "applicant for employment," than to hold a former employer liable for blacklisting his former employee.

The point is we don't know exactly why Congress chose to limit the protection in section 704(a) to "employees and applicants for employment." Possibly it was an oversight, as the majority implies. More likely it was a result intentionally worked out in the legislative process. Whatever the reason, applying the plain meaning of "employee" will not produce a grossly absurd result. Until Congress rewrites section 704(a) or redefines "employee," we must apply the statute as written.

## II.

The court also holds that Veprinsky's claim that Fluor Daniel retaliated against him

---

**3.** The other allegations relate to his status as an applicant which is specifically protected under the Act.

when it refused to rehire him presents a question of fact which cannot be decided on summary judgment. Significantly, as an applicant Veprinsky is clearly covered by the statute. Refusal to rehire and accusations that Fluor Daniel would not rehire because he had previously engaged the company in a Title VII lawsuit could be valid claims under 704(a) by Veprinsky as an applicant for employment. While the company's reasons for refusing to hire may not in any way be retaliatory and may well be based on legitimate, non-discriminatory reasons, the important point is that an *applicant* (as opposed to a former employee) has a statutory right to his day in court if his claims survive summary judgment. Thus I concur with the court's conclusion that Veprinsky's claim is still viable. However, with regard to the allegations pertaining to Pollack and Stan and Fluor Daniel's disclosure of the EEOC claim, only as the claim connects to Veprinsky's status as an applicant would I send this back to the district court for further review. Any reversal by this court should be confined to those issues directed at Veprinsky's status as an applicant, and not those related to his status as a former employee.

### III.

Finally, I do not concur with the court's long discussion distinguishing *Koelsch v. Beltone Elec. Corp.*, 46 F.3d 705, 709 (7th Cir. 1995), and *Reed v. Shepard*, 939 F.2d 484 (7th Cir.1991). The retaliation issue in *Reed* was a secondary issue, because the claims were unrelated to employment. The central question in that case was whether a person who substantially created a hostile sexual environment could blame that environment as the cause for her discharge. However, the statement in *Koelsch*, that "[t]he law in this circuit is quite clear, however, that post-termination events are not actionable under § 2000e–3(a)" is more than mere dicta. The court reasons that such a holding was unnecessary because Koelsch's claim was doomed by the fact that the alleged retaliation had no impact on Koelsch's job search. This was merely an added reason for affirming the dismissal of Koelsch's claim. But consider the actual language of *Koelsch:* "*Even* if Title VII offered possible relief, Koelsch's

efforts to seek employment were not remotely impacted by Posen's alleged comment; she had already received several offers of employment, including one from RTC, and had accepted one by that time." *Id.* In fact, under *Koelsch's* alternative reasoning, Veprinsky's claim that Fluor Daniel retaliated against him by providing false information to Sargent & Lundy fails because Veprinsky already had the job and he failed to offer any evidence that the alleged false information had any adverse effect on his employment. *Id. See also, Nelson v. Upsala College*, 51 F.3d 383, 389 (3d Cir.1995) (rejecting post-termination retaliation claim because the plaintiff "failed to offer any evidence that these remarks had any adverse effect on her future employment.").

### IV.

As a former employee, Veprinsky has no cause of action under Title VII (42 U.S.C. § 2000e–3(a)) (704(a)) because protection against retaliation is limited to employees or applicants of the employer who allegedly committed the violation. Therefore I respectfully dissent from the court's conclusion that Veprinsky, as a former employee, has a valid claim against Fluor Daniel for retaliation. I do concur with the court that as an applicant Veprinsky has a statutory right under 704(a) and that it was probably premature to grant summary judgment if there was direct evidence that the EEOC claim could have been a motivating factor in rejecting his application for rehire. And if the disclosure of the EEOC charge to the placement firm Pollack & Skan impacted Veprinsky in his status as an applicant, I concur that further review is in order. But I do not join in the expanded discussion regarding the Seventh Circuit's opinions in *Reed* and *Koelsch*.

For these and the foregoing reasons, I concur in part and dissent in part.